**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STEPHANIE FELL, *et al.*,

                Plaintiffs,

        v.

DONALD J. TRUMP,
*in his official capacity as*
*President of the United States,*
*et al.*

             Defendants.

Case No. 1:25-cv-04206

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF  CONTENTS**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA ...........................1

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS..........................1

INTRODUCTION.................................................................................................................................2

BACKGROUND ...................................................................................................................................2

    Statutory and Regulatory Background...................................................................................2

    Procedural Background. ...........................................................................................................4

STANDARD OF REVIEW...................................................................................................................5

ARGUMENT..........................................................................................................................................6

I.      PLAINTIFFS LACK STANDING TO SUE NON-EMPLOYER AGENCIES. ..................7

II.     PLAINTIFFS FAILED TO EXHAUST ALL THEIR CLAIMS. ...........................................9

III.    PLAINTIFFS FAIL TO STATE VIABLE CLAIMS FOR RELIEF.......................................10

    A.     Plaintiffs do not plausibly allege First Amendment retaliation claims..........................10

    B.     Plaintiffs do not plausibly allege Title VII violations. .....................................................12

         1.    Title VII does not endorse Plaintiffs' "advocacy" theory of discrimination. ..................................................................................................12

         2.    Plaintiffs do not plausibly allege intentional discrimination. ................................14

         3.    Plaintiffs do not plausibly allege disparate impact. ................................................15

    C.     Plaintiffs' remaining CSRA claims fail.............................................................................16

CONCLUSION....................................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Agnew v. Gov. of the Dist. of Columbia,*
  920 F.3d 49 (D.C. Cir. 2019).................................................................................................13

*Am. Fed. Gov. Emps. v. U.S. Dep't of Educ.,*
  --- F. Supp. 3d ---, 2025 WL 3123707 (D.D.C. Nov. 7, 2025)..............................................9

*Am. Nat'l Ins. Co. v. FDIC,*
  642 F.3d 1137 (D.C. Cir. 2011)...............................................................................................6

*Andrade v. Lauer,*
  729 F.2d 1475 (D.C. Cir. 1984)...............................................................................................9

*Aref v. Lynch,*
  833 F.3d 242 (D.C. Cir. 2016)...............................................................................................11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................................................6

*Barrett v. Whirlpool Corp.,*
  556 F.3d 502 (6th Cir. 2009)..................................................................................................13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................................................6

*Bostock v. Clayton County,*
  590 U.S. 644 (2020)................................................................................................................13

*Bowie v. Maddox,*
  653 F.3d 45 (D.C. Cir. 2011)..................................................................................................11

*Burford v. Yellen,*
  246 F. Supp. 3d 161 (D.D.C. 2017)........................................................................................16

*Butler v. West,*
  164 F.3d 634 (D.C. Cir. 1999)..................................................................................................3

*Convertino v. DOJ,*
  393 F. Supp. 2d 42 (D.D.C. 2005)............................................................................................9

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)..................................................................................................................5

*Doe #1 v. Am. Fed. Gov. Emps.,*
  554 F. Supp. 3d 75 (D.D.C. 2021)....................................................................................14, 15

*Frank v. Gaos,*
  586 U.S. 485 (2019)..................................................................................................................8

*Frith v. Whole Foods Market, Inc.,*
  38 F.4th 263 (1st Cir. 2022)....................................................................................................13

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006)...........................................................................................................11, 12

ii

*Greater New Orleans Fair Housing Action Ctr. v. HUD*,
   639 F.3d 1078 (D.C. Cir. 2011)................................................................16

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019)..................................................................8

*James v. Von Zemenszky*,
   284 F.3d 1310 (Fed. Cir. 2002) ..................................................................2

*Jerome Stevens Pharms., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005)..................................................................6

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004)....................................................................6

*Keith v. GAO*,
   No. 21-2010, 2022 WL 3715776 (D.D.C. Aug. 29, 2022) .......................14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ....................................................................................5

*L. Xia v. Tillerson*,
   865 F.3d 643 (D.C. Cir. 2017)..................................................................14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................7

*Media Matters for Am. v. Paxton*,
   138 F.4th 563 (D.C. Cir. 2025) ................................................................11

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ......................................................................................7

*Perry v. MSPB*,
   582 U.S. 420 (2017) ....................................................................................3

*Sebunya v. Mayorkas*,
   No. 21-cv-780, 2024 WL 1076809 n.8 (D.D.C. Mar. 8, 2024)................13

*Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*,
   134 F.4th 585 (D.C. Cir. 2025) ................................................................15

*SS&T, LLC v. Am. Univ.*,
   No. 19-721 (JDB), 2020 WL 1170288 (D.D.C. Mar. 11, 2020) ..............14

*Steadman v. Gov., U.S. Soldiers' & Airmen's Home*,
   918 F.2d 963 (D.C. Cir. 1999)....................................................................9

*Thompson v. Dist. of Columbia*,
   530 F.3d 914 (D.C. Cir. 2008)..................................................................11

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ....................................................................................7

*Turner v. U.S. Agency for Glob. Media*,
   502 F. Supp. 3d 333 (D.D.C. 2020)............................................................9

*Weaver v. U.S. Info. Agency*,

iii

87 F.3d 1429 (D.C. Cir. 1996) .......................................................................................................9

*Wilburn v. Robinson*,
    480 F.3d 1140 (D.C. Cir. 2007) ...............................................................................................11

*Winder v. Erste*,
    566 F.3d 209 (D.C. Cir. 2009) .................................................................................................11

**Statutes**

5 U.S.C. § 7703(b)(1)(A) .................................................................................................................3

5 U.S.C. § 7701 ................................................................................................................................2

5 U.S.C. § 7702(e)(1)(A) ..................................................................................................................3

42 U.S.C. § 2000e-2(a) ...................................................................................................................13

42 U.S.C. § 2000e-3(a) ...................................................................................................................13

42 U.S.C. § 2000e-16(a) .................................................................................................................13

42 U.S.C. § 2000e-16(c) ............................................................................................................ 3, 12

Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1111.................................................17

**Rules**

Fed. R. Civ. P. 25(d) ........................................................................................................................8

Federal Rule of Civil Procedure 12(b)(1)................................................................................... 1, 5

Federal Rule of Civil Procedure 12(b)(6)................................................................................... 2, 6

**Regulations**

5 C.F.R. pt. 351 ..............................................................................................................................16

5 C.F.R. § 351.302..........................................................................................................................17

5 C.F.R. § 351.302(a) .....................................................................................................................17

5 C.F.R. § 351.901..........................................................................................................................2

5 C.F.R. § 1201.154(b)(2) ................................................................................................................3

5 C.F.R. § 1201.175..........................................................................................................................3

29 C.F.R. § 1614.302(a) ...................................................................................................................3

29 C.F.R. § 1614.310(b) ...................................................................................................................3

29 C.F.R. § 1614.105(a) ...................................................................................................................3

29 C.F.R. § 1614.106 ........................................................................................................................3

29 C.F.R. § 1614.407 ........................................................................................................................3

*Ending Radical and Wasteful Government DEI Programs and Preferencing*,
    Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025) ....................................................4

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*,
    Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025) ....................................................4

**INTRODUCTION**

The eight named Plaintiffs here worked at seven different federal agencies or sub-agencies prior to their removals under reductions-in-force ("RIFs") carried out in 2025 to implement the President's Executive Orders directing agencies to terminate, subject to applicable law, federal Diversity, Equity, and Inclusion ("DEI") initiatives.[1] Plaintiffs allege that in removing them, their former agencies violated the First Amendment, Title VII of the Civil Rights Act of 1964, and the Civil Service Reform Act of 1978 ("CSRA"). But Plaintiffs do not stop with their former employing agencies; they assert putative class-wide claims against twenty-seven agencies and sub-agencies, the majority of which they have no connection to, asking the Court to award class-wide relief against all those Defendants, as well as the heads of each in their official capacities. There is no basis for any relief, much less the sweeping relief Plaintiffs seek. The Court should dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim on at least three grounds.

*First*, the Court lacks jurisdiction over claims against agencies and agency heads that did not employ any Plaintiff—and thereby did not take (and could not have taken) any personnel action against them. Under Article III, Plaintiffs cannot demonstrate standing to sue any Defendant whose allegedly unlawful actions did not cause their injuries. Nor can they satisfy their jurisdictional burden against agencies other than those they worked for by pointing to alleged injuries sustained by unnamed members of a putative class. Because no Plaintiff has standing to sue most of the Defendants named in the Amended Complaint, the Court should dismiss those Defendants from the case under Federal Rule of Civil Procedure 12(b)(1). That would eliminate twenty of twenty-seven named Defendant

---

[1] Plaintiffs were employed by the U.S. Department of Homeland Security ("DHS"); the U.S. Department of Justice ("DOJ"); the U.S. Department of Health and Human Services ("HHS"); the National Institutes of Health ("NIH") (a sub-agency of HHS); the Office of Personnel Management ("OPM"); the U.S. Commodity Futures Trading Commission ("CFTC"); and the U.S. Department of the Treasury ("Treasury").

agencies or sub-agencies, thus at minimum narrowing and streamlining the scope of this litigation at the outset.

*Second*, Plaintiffs failed to administratively exhaust all their claims. The Court should therefore dismiss Plaintiffs' claims to the extent they were not raised in administrative proceedings, and, for each Plaintiff, consider only those claims (1) raised in administrative proceedings and (2) asserted against that Plaintiff's former employing agency. At minimum, that would further narrow the scope of the litigation at this stage.

*Third*, any remaining claims should be dismissed for failure to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs fail to plead a First Amendment retaliation claim because they do not plausibly allege that they engaged in any protected First Amendment activity or that their employing agencies perceived them to have done so. They also fail to plead Title VII violations, despite advancing three different theories. Title VII does not recognize Plaintiffs' "advocacy" theory, and the allegations in the Amended Complaint are too threadbare to support either a disparate treatment or a disparate impact theory. And finally, Plaintiffs fail to identify any procedure, protection, or right under the CSRA that Defendants allegedly violated.

On any or all of these grounds, the Court should therefore dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6).

## BACKGROUND

**Statutory and Regulatory Background.** Former federal employees may challenge their removals through RIFs[2] under the administrative and judicial review provisions of the CSRA. *See* 5 U.S.C. §§ 7701, 7702, 7703; *see also* 5 C.F.R. § 351.901 (providing that "[a]n employee who has been . . . separated . . . by a reduction in force action may appeal to the [MSPB]"). In general, the United

---

[2] A RIF is "administrative procedure[s] by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002).

States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review any final administrative order. 5 U.S.C. § 7703(b)(1)(A). But a district court may have jurisdiction over statutorily defined "mixed cases"—those that involve allegations of both discrimination (including under Title VII of the Civil Rights Act) and personnel actions appealable to the Merit Systems Protection Board ("MSPB") under the CSRA's Chapter 75. *Id.* § 7703(b)(2); *see also id.* § 7702(a)(1)(B); 42 U.S.C. §§ 2000e-16(c); *Perry v. MSPB*, 582 U.S. 420, 422-23 (2017).

To bring a mixed case, an employee must first elect and pursue an administrative remedy under the CSRA. At this stage, the employee "can choose between filing a 'mixed case complaint' with her agency's [Equal Employment Opportunity] office and filing a 'mixed case appeal' directly with the MSPB." *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999); *see also* 29 C.F.R. § 1614.302(a), (b). If the employee files a mixed case complaint and the Equal Employment Opportunity ("EEO") office issues an adverse decision, the employee may appeal to the MSPB or file suit in district court within 30 days of the adverse decision. 29 C.F.R. §§ 1614.302(d)(1)(ii), (d)(3), 1614.310(a). The employee may also appeal to the MSPB or file suit if the EEO office fails to issue a decision within 120 days. 5 U.S.C. §§ 7702(e)(1)(A), (e)(2); 29 C.F.R. §§ 1614.302(d)(1)(i), 1614.310(g); 5 C.F.R. § 1201.154(b)(2). If the employee elects instead to pursue a mixed case appeal with the MSPB, she may file suit in district court if the MSPB either decides an appeal adversely to the employee or fails to issue a decision after 120 days. 5 U.S.C. §§ 7702(e)(1)(B), 7703(b); 5 C.F.R. § 1201.175; 29 C.F.R. § 1614.310(b).

A plaintiff may also proceed in district court by asserting only discrimination claims under Title VII. 42 U.S.C. § 2000e-16(c). Before filing in district court or pursuing an EEOC appeal, an employee generally must first initiate the agency EEO process by contacting an EEO counselor and then filing a formal complaint with the agency. *See, e.g.*, 29 C.F.R. §§ 1614.105(a), 1614.106(a)-(b), 1614.407.

**Procedural Background.** Plaintiffs are former employees of seven Executive Branch agencies or sub-agencies. Each alleges that they were separated from the federal service under a RIF implemented by their employing agency in response to Executive Orders 14151 and 14173. *See Ending Radical and Wasteful Government DEI Programs and Preferencing*, Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); *see also Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025). Among other things, E.O. 14151 directs Executive Branch agencies to "terminate, to the maximum extent allowed by law, all DEI, DEIA, and 'environmental justice' offices and positions." 90 Fed. Reg. at 8340. Similarly, E.O. 14173 directs agencies to "terminate all discriminatory and illegal preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements." 90 Fed. Reg. at 8634.

Seven of the eight Plaintiffs—Stephanie Fell ("Fell"), Stephanie Gilliard ("Gilliard"), Mahri Stainnak ("Stainnak"), Kamir Carrillo-Figueroa ("Carrillo-Figueroa"), Lauren Jensen ("Jensen"), David Laboy ("Laboy"), and Kimiko Oliver ("Oliver")—allege that they filed mixed case appeals with the MSPB. Am. Compl. ¶¶ 18, 19, 21, 22, 23, 24, 25, ECF No. 8. The eighth Plaintiff, L.L. Smith ("Smith"), alleges that she filed a complaint with her agency's EEO office, raising only Title VII discrimination claims. *Id.* ¶¶ 20, 199. Smith also alleges that she raised First Amendment claims with the United States Office of Special Counsel. *Id.* Each Plaintiff alleges that no final decision was reached within the prescribed time. On December 3, 2025, they filed suit, Compl., ECF No. 1, and (through their Amended Complaint) assert claims under the First Amendment, Title VII, and the CSRA, seeking both individual and class-wide relief.

Specifically, the Amended Complaint asserts seven causes of action. *See* Am. Compl. ¶¶ 255-284. *First*, all Plaintiffs assert a First Amendment claim (Count I) by alleging that Defendants removed them from federal service based on their "actual or perceived political beliefs and associations." *Id.* ¶¶

4

255-259. Plaintiffs seek declaratory and injunctive relief, including reinstatement. *Id. Second*, all Plaintiffs assert a Title VII intentional discrimination claim based on advocacy (Count II) by alleging that Defendants adopted and implemented a government wide policy of discriminating against employees who "advocate for or are perceived to advocate for" protected racial or gender groups. *Id.* ¶¶ 260-263. *Third*, a subset of Plaintiffs—Fell, Gilliard, Smith, Stainnak, Carrillo-Figueroa, Jensen, and Oliver—assert a Title VII intentional discrimination claim based on gender (Count III), on behalf of themselves and a putative "Gender Subclass," alleging that Defendants intentionally targeted women and non-binary employees for removal. *Id.* ¶¶ 264-267. *Fourth*, a subset of Plaintiffs—Gilliard, Smith, Carrillo-Figueroa, Laboy, and Oliver—assert a Title VII intentional discrimination claim based on race and ethnicity (Count IV), on behalf of themselves and a putative "Race/Ethnicity Subclass," alleging that Defendants intentionally targeted employees of color for removal. *Id.* ¶¶ 268-271. *Fifth*, Plaintiffs Fell, Gilliard, Smith, Stainnak, Carrillo-Figueroa, Jensen, and Oliver assert a Title VII disparate impact discrimination claim (Count V) on behalf of themselves and the gender subclass. *Id.* ¶¶ 272-275. *Sixth*, Plaintiffs Gilliard, Smith, Carrillo-Figueroa, Laboy, and Oliver assert a Title VII disparate impact claim based on race and ethnicity (Count VI). *Id.* ¶¶ 276-279. *Seventh*, Plaintiffs Fell, Gilliard, Stainnak, Carrillo-Figueroa, Jensen, Laboy, and Oliver assert claims under the CSRA (Count VII) by alleging that Defendants implemented RIFs in a manner that violated statutory and regulatory requirements. *Id.* ¶¶ 280-284. Across these claims, Plaintiffs seek both individual and class wide relief such as reinstatement, back pay, compensatory damages, and declaratory and injunctive relief invalidating the challenged policies. *Id.* at Prayer for Relief.

## STANDARD OF REVIEW

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Although courts accept the complaint's well-pleaded factual

allegations as true, *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), they may consider materials outside the complaint to determine whether jurisdiction exists. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (cleaned up). On a Rule 12(b)(6) motion, the Court must credit only "well-pleaded" factual allegations, not "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Twombly*, 550 U.S. at 555-56. The Court may also consider materials that "are referred to in the complaint and are integral to" the plaintiff's claims. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

## ARGUMENT

Plaintiffs' Amended Complaint fails at multiple threshold stages. First, Plaintiffs lack Article III standing to sue agencies and agency heads that never employed them and therefore could not have caused their alleged injuries. Second, with respect to their employing agencies, Plaintiffs did not exhaust all of the claims they now assert, so the case must be narrowed to the claims, if any, that were properly presented in administrative proceedings. Third, any remaining claims fail on the merits given that Plaintiffs do not plausibly allege protected First Amendment activity, Title VII does not recognize their advocacy theory and their race- and sex-discrimination allegations are inadequately pleaded, and their remaining CSRA theories do not identify any violated statutory or regulatory requirement. The Amended Complaint should therefore be dismissed under Rules 12(b)(1) and 12(b)(6).

### I.   PLAINTIFFS LACK STANDING TO SUE NON-EMPLOYER AGENCIES.

As a threshold matter, the Court should narrow this case by dismissing Plaintiffs' claims against all Defendants other than the agencies and sub-agencies (and their heads) that employed them. To establish standing at the pleading stage, a plaintiff must plausibly allege an injury in fact, a causal connection showing that the injury is traceable to that defendant's challenged conduct, and a likelihood that the requested relief against that defendant will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[S]tanding is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Instead, "for every defendant, there must be at least one plaintiff" who satisfies each requirement of standing. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). Plaintiffs cannot satisfy any of those requirements against the twenty Defendant agencies and sub-agencies they never worked for.

Thus, at the outset, the Court should dismiss all claims against the following Defendants:

- The Office of Management and Budget (and Director Russell Vought);

- The U.S. Department of Agriculture (and Secretary of Agriculture Brook Rollins);

- The Central Intelligence Agency (and Director John L. Ratcliffe);

- The U.S. Department of Commerce (and Secretary of Commerce Howard Lutnick);

- The U.S. Department of Defense (and Secretary of Defense Pete Hegseth);

- The U.S. Department of Education (and Secretary of Education Linda McMahon);

- The U.S. Department of Energy (and Secretary of Energy Chris Wright);

- The U.S. Environmental Protection Agency (and Administrator Lee Zeldin);

- The Federal Aviation Administration (and Administrator Bryan Bedford);

- The Federal Reserve Board (and Chairman Jerome H. Powell);

- The Federal Trade Commission (and Chairman Andrew Ferguson);

- The U.S. Food and Drug Administration (and Commissioner Martin A. Makary);

7

- The U.S. Department of Housing and Urban Development (and Secretary of Housing and Urban Development Scott Turner);

- The U.S. Department of the Interior (and Secretary of the Interior Doug Burgum);

- The U.S. Department of Labor (and Secretary of Labor Lori Chavez-DeRemer);

- The National Aeronautics and Space Administration (and Administrator Jared Isaacman);[3]

- The Office of the Director of National Intelligence (and Director of National Intelligence Tulsi Gabbard);

- The Department of Transportation (and Secretary of Transportation Sean Duffy);

- The U.S. Department of State (and Secretary of State Marco Rubio); and

- The U.S. Department of Veterans Affairs (and Secretary of Veterans Affairs Douglas A. Collins).

Given that none of those Defendants had any role in employing or removing any Plaintiff, no Plaintiff can satisfy standing's causation or redressability requirements as to any of them. Plaintiffs might seek to overcome that standing deficiency by alleging injuries to unnamed members of the putative class they seek to represent. But that would fail; Plaintiffs cannot rely on "an absent class member's individual standing" to satisfy Article III. *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019). Where "no named plaintiff has standing" to sue a defendant, the Court is "powerless" to do anything other than dismiss the claims against that defendant. *Frank v. Gaos*, 586 U.S. 485, 492 (2019).[4] It should do so here, thereby streamlining the litigation at the very outset.

---

[3] *See* Fed. R. Civ. P. 25(d).

[4] In any event, the Amended Complaint's allegations are insufficient to establish *anyone's* standing to sue the Defendants identified in Part I, above. Indeed, the Amended Complaint does not allege that these Defendants took any impermissible action—only that they had responsibility for implementing the Executive Orders and OPM guidance at issue. *See, e.g.*, Am. Compl. ¶ 29.

## II.   PLAINTIFFS FAILED TO EXHAUST ALL THEIR CLAIMS.

Under the CSRA, exhaustion is a jurisdictional requirement. *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996). Here, Plaintiffs claim to have administratively exhausted their claims either by filing mixed case appeals with the MSPB or (in the case of Smith) a complaint with their agency's EEO office. But Plaintiffs' administrative filings reveal that they did not exhaust all the claims they assert here. The Court should therefore further narrow this case to only those claims that each Plaintiff properly exhausted.

*First*, Smith did not exhaust her claims against Defendant NIH at all. While Smith sought informal agency counseling on March 11, 2025, Am. Compl. ¶ 20; Ex. A (initial EEO contact), she did not file her formal EEO complaint until December 23, 2025. Ex. B (Smith Complaint). Because no final decision has been made on that complaint, and because fewer than 120 days have elapsed, her attempt at judicial review is premature.

*Second*, Smith and Oliver did not exhaust their First Amendment claims through the CSRA. "[E]ven for 'claims arising directly under the Constitution,' the CSRA's exhaustion requirement is a 'jurisdictional prerequisite.'" *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 366 (D.D.C. 2020) (quoting *Weaver*, 87 F.3d 1433); *see also Steadman v. Gov., U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1999) ("When the statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation,' exhaustion is mandated." (quoting *Andrade v. Lauer,* 729 F.2d 1475, 1493 (D.C. Cir. 1984))); *Convertino v. DOJ*, 393 F. Supp. 2d 42, 48 (D.D.C. 2005) (holding that "this [c]ourt [] cannot take jurisdiction" over a First Amendment retaliation claim "until plaintiff has exhausted his CSRA remedies"); *cf. Am. Fed. Gov. Emps. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2025 WL 3123707, at *9 (D.D.C. Nov. 7, 2025) (explaining that "[u]nder normal circumstances" a plaintiff must first exhaust a First Amendment challenge under the CSRA). Oliver did not mention the First Amendment in her MSPB

appeal. Ex. C. Smith likewise did not mention the First Amendment in her formal EEO complaint. Ex. B. Although Smith alleges that she raised her First Amendment claims to the Office of the Special Counsel, Am. Compl. ¶ 20, that is not the prescribed administrative remedy under the CSRA for a covered employee seeking relief from a statutorily defined major adverse action under Chapter 75.

*Third*, before the MSPB or their agencies, no Plaintiff except Fell pressed the theory that Title VII bars discrimination on the basis of *advocacy* for racial and sexual minorities. Ex. D. At most, several Plaintiffs alleged that discrimination on the basis of perceived *partisan affiliation* is prohibited under the CSRA. But because no one argued that Title VII bars discrimination on the basis of advocacy, no Plaintiff has properly exhausted that claim.

*Fourth*, every Plaintiff except Laboy presses theories of sex discrimination under Title VII. But Oliver did not raise her sex discrimination claims before the MSPB. She alleged only racial discrimination. Ex. C. Thus, only Fell, Gilliard, Stainnak, Carrillo-Figueroa, and Jensen have established jurisdiction over their sex discrimination claims.

*Fifth*, every Plaintiff except Fell, Stainnak, and Jensen alleges racial discrimination. But Carrillo-Figueroa did not allege racial discrimination before the MSPB. Ex. E. Thus, the Court can assert jurisdiction only over racial discrimination claims asserted by Laboy and Oliver.

## III.    PLAINTIFFS FAIL TO STATE VIABLE CLAIMS FOR RELIEF.

At most, the Court has jurisdiction only over those claims that each Plaintiff administratively exhausted against his or her employing agency. But jurisdiction aside, all claims are either nonviable or inadequately pleaded and should therefore be dismissed under Rule 12(b)(6).

### A. Plaintiffs do not plausibly allege First Amendment retaliation claims.

Plaintiffs' claims that their removals violated the First Amendment's prohibition on "retaliation against individuals for their speech," Am. Compl. ¶ 256; *see also id.* ¶ 282.c, d, lack any plausible basis. To meet their pleading burden, Plaintiffs must plausibly allege (1) that they engaged in

10

protected First Amendment activity; (2) that the Defendants took adverse action sufficient to deter a person of ordinary firmness from engaging in that protected activity; and (3) a causal link between the exercise of the First Amendment right and the adverse action taken. *Media Matters for Am. v. Paxton*, 138 F.4th 563, 584 (D.C. Cir. 2025); *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Plaintiffs fail to meet that burden because they do not plead facts showing that they engaged in First Amendment protected activity, let alone that such activity was the cause of their separation.

Government employees have no First Amendment rights in speech that is part of their job responsibilities. *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006); *see also Bowie v. Maddox*, 653 F.3d 45, 47 (D.C. Cir. 2011) ("[O]nly when public employees 'make public statements outside the course of performing their official duties' do they 'retain some possibility of First Amendment protection.'" (quoting *Garcetti*, 547 U.S. at 424)); *Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009) ("[I]f the employee spoke 'pursuant to' his official duties, he cannot claim constitutional protection." (quoting *Garcetti*, 547 U.S. at 421)); *Thompson v. Dist. of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008) (holding that public employees "receive no First Amendment protection" when they speak "pursuant to their official duties"); *Wilburn v. Robinson*, 480 F.3d 1140, 1150 (D.C. Cir. 2007) ("In the wake of *Garcetti*, courts of appeals have denied First Amendment protection to government employee speech if the contested speech falls within the scope of the employee's uncontested employment responsibilities."). For that reason, a government employee whose job is "to root out discrimination" has no First Amendment right to "comment[] on racial discrimination in the performance of her duties." *Wilburn*, 480 F.3d at 1150.

That principle resolves Plaintiffs' First Amendment claims. The only two Plaintiffs who attempt to identify any allegedly protected speech expressly concede that their speech was part of their job responsibilities. Fell alleges that, as part of her "work," she "advocat[ed] for protected racial and gender groups." Am. Compl. ¶ 152. Further, Stainnak alleges that they "advance[d] inclusion

11

initiatives." *Id.* Under *Garcetti*, those allegations of activity undertaken pursuant to Plaintiffs' job duties do not constitute speech protected by the First Amendment. 547 U.S. at 421-22. Nor can Plaintiffs plausibly allege that they were targeted based on their "actual or perceived political beliefs and associations." Am. Compl. ¶ 256; *see also id.* ¶ 282.c. Nothing in the Amended Complaint creates a plausible inference that Plaintiffs' employers (or anyone in the Executive Branch) had *any* perception about Plaintiffs' personal beliefs or associations. To be sure, Plaintiffs point to quotes expressing disagreement with DEI *policies* and the ideology underlying them, as well as advocating for eliminating positions responsible for implementing those policies. *See id.* ¶¶ 102-106. But none of the quotes suggest that Plaintiffs themselves were perceived as *personally* adhering to that ideology. At bottom, Plaintiffs' claim is predicated on the mistaken notion that they have a First Amendment interest in speech they undertook as part of their federal employment.

## B. Plaintiffs do not plausibly allege Title VII violations.

Next, Plaintiffs assert three categories of Title VII claims: (1) intentional discrimination based on "advocacy" (Count Two); (2) intentional discrimination based on race and sex (Counts Three, Four, and Seven); and (3) disparate impact based on race and sex (Counts Five and Six). As an initial matter, Title VII affords no cause of action against any defendant other than "the head of the department, agency, or unit" that took "final action" against each Plaintiff. 42 U.S.C. § 2000e-16(c) (authorizing a civil action "in which . . . the head of the department, agency, or unit, as appropriate, shall be the defendant"). The claims should therefore be dismissed as to all other Defendants, including the President. But even as to Plaintiffs' agency heads, each theory fails.

### 1. Title VII does not endorse Plaintiffs' "advocacy" theory of discrimination.

Contrary to Count Two of the Amended Complaint, Title VII does not speak to "punishing workers who advocate for or are perceived to advocate for Americans who belong to protected gender or racial communities." Am. Compl. ¶ 261. Instead, Title VII prohibits discrimination based on race,

color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-16(a) (providing, in the federal sector provision, that federal personnel actions "shall be made free from any discrimination" on those grounds). By contrast, with respect to employers outside the federal government, Title VII likewise prohibits discrimination "because of" an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Discrimination is "based on" or "because of" a covered characteristic "[i]f the employer intentionally relies in part on an individual employee's [covered characteristic] when deciding to discharge the employee"—that is, "if changing the employee's" covered characteristic "would have yielded a different choice by the employer." *Bostock v. Clayton County*, 590 U.S. 644, 659-60 (2020).

Plaintiffs' advocacy theory does not allege discrimination "based on" or "because of" a covered characteristic. *See id.* As the First Circuit explained, "the race [or sex] of the plaintiff is irrelevant for purposes of [an] 'advocacy' theory of discrimination—all that matters is the race [or sex] of the persons on whose behalf the advocacy is occurring." *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 272 (1st Cir. 2022). Because "Title VII's language, as discussed in *Bostock*, forecloses such a theory," *id.*, Count Two must be dismissed.[5]

Indeed, Plaintiffs' theory would violate "the surplusage canon's directive that a statute not be interpreted in a way that renders any part of it superfluous." *Agnew v. Gov. of the Dist. of Columbia*, 920 F.3d 49, 57 (D.C. Cir. 2019). Title VII specifically declares it an "unlawful employment practice" for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Plaintiffs do not claim that their alleged advocacy on behalf of racial or sexual minorities consisted of opposing "an unlawful employment practice." *See id.* Instead, their advocacy theory presumes that Title VII prohibited

---

[5] For that reason, this Court should not rely on the Sixth Circuit's pre-*Bostock* authority endorsing the advocacy theory of discrimination. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513-14 (6th Cir. 2009); *cf. Sebunya v. Mayorkas*, No. 21-cv-780, 2024 WL 1076809, at *9 n.8 (D.D.C. Mar. 8, 2024) (noting that "[t]he D.C. Circuit has not chosen sides in [the] nascent circuit split" between the First and Sixth Circuits).

discrimination on the basis of advocacy for racial or sexual minorities, regardless of whether the advocacy concerned an unlawful employment practice. If Plaintiffs were right, then there would have been no need for Congress to specifically protect those who advocate in opposition to unlawful employment practices.

### 2. Plaintiffs do not plausibly allege intentional discrimination.

Plaintiffs' allegations that they were "intentionally target[ed]" based on race or sex, Am. Compl. ¶¶ 265, 269, are wholly insufficient to sustain their claims of intentional discrimination. To satisfy their pleading burden, Plaintiffs must "'allege some facts' to give rise to the reasonable inference that [their] race, sex, age, or disability 'was the reason for defendant's actions.'" *Keith v. GAO*, No. 21-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (quoting *Doe #1 v. Am. Fed. Gov. Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021)). Here, "[t]he allegations of discrimination in the amended complaint are" too "threadbare" to meet that burden. *L. Xia v. Tillerson*, 865 F.3d 643, 659 (D.C. Cir. 2017).

Standing alone, Plaintiffs' assertion that "similarly-situated employees outside their protected class were not" separated, Am. Compl. ¶ 146, is plainly insufficient. *L. Xia*, 865 F.3d at 660 (holding that an unsupported allegation that "similarly situated" persons were treated differently fails to satisfy the *Twombly/Iqbal* standard). After all, "'[a] plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough' to state a claim." *Doe #1*, 554 F. Supp. 3d at 103 (quoting *SS&T, LLC v. Am. Univ.*, Civ. A. No. 19-721 (JDB), 2020 WL 1170288, at *5 (D.D.C. Mar. 11, 2020)). Instead, the plaintiff must set forth "allegations to support an inference that" others "were similarly situated" to her. *Keith*, 2022 WL 3715776, at *4; *see also Doe #1*, 554 F. Supp. 3d at 103 (requiring "information" sufficient to show that the plaintiff was treated differently than a "similarly situated" person).

14

The Amended Complaint is bereft of such allegations. Carrillo-Figueroa, Laboy, and Oliver allege nothing further on discriminatory intent by their employers at the CFTC, Treasury, and the CFTC, respectively; Gilliard alleges only that DOJ structured a one-person competitive level around her and that her first- and second-line supervisors, both white, were not included in the RIF by her employer at DOJ's Executive Office for Immigration Review. Am. Compl. ¶¶ 177-180, 203-208, 227-232, 236-240. Stainnak alleges only a lack of "aware[ness]" of "straight, white males" at OPM who were separated "due to the anti-DEI EOs." *Id.* ¶ 188. But Stainnak does not allege that any "straight, white males" were similarly situated to Stainnak. Similarly, Jensen avers that "all employees in ODPHP who were subjected to a RIF were women." *Id.* ¶ 216. She does not allege, however, that any male ODPHP employees were similarly situated to the separated female employees, or that any similarly situated ODPHP employees were treated differently.

Finally, Fell and Smith allege that "white, male employees" with "similar roles" at DHS and NIH, respectively, were "largely protected from separation." *Id.* ¶ 169, 198. But the conclusory allegation that others were "similarly situated" cannot be substantiated by an equally conclusory assertion that those persons had "similar roles." *See Doe #1*, 554 F. Supp. 3d at 103. In *Doe #1*, a plaintiff alleged that her co-worker was "similarly situated" because they were "counterpart[s]." *Id.* The court held that that allegation was "fatally nonspecific" because it was "not evident" whether, among other things, the two employees had comparable hours, credentials, responsibilities, and experience. *Id.* The same is equally true of Fell and Smith's barebones allegations that their colleagues had "similar roles."

### 3.  Plaintiffs do not plausibly allege disparate impact.

Finally, Plaintiffs also fall short of meeting their pleading burden on their disparate impact theories. To state a disparate impact claim, "[a]t the motion to dismiss stage, a plaintiff must plausibly allege that a disparity exists and identify a practice or policy that plausibly caused the disparity." *Shanks*

15

*v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 592 (D.C. Cir. 2025). "The correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied." *Greater New Orleans Fair Housing Action Ctr. v. HUD*, 639 F.3d 1078, 1086 (D.C. Cir. 2011). "Common sense and fairness dictate that a plaintiff must, at minimum, allege some statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation." *Burford v. Yellen*, 246 F. Supp. 3d 161, 180 (D.D.C. 2017) (citation modified).

Plaintiffs do not identify any such disparity. In fact, no Plaintiff other than Fell even attempts to do so as to their own agencies. And the purported statistical disparity Fell alleges in an attempt to substantiate her disparate impact claim based on sex compares apples to oranges. Fell alleges that 97 women were separated pursuant to the RIF in "a civil rights office" within DHS, compared with 37 men in that same office. Am. Compl. ¶ 143. This, according to Fell, shows that women from that office were separated in numbers disproportionate to their percentage of the total federal workforce and the total DHS workforce. As an initial matter, it is not even clear from this allegation that the cited statistics relate to Fell's *own* office. But even assuming they do, the relevant comparison is to the male-female make-up of Fell's office, not the federal government or DHS as a whole. Fell thereby alleges only a numerator—the number of women and men separated—not the denominator: the number of women and men in the relevant office or unit before the RIF. Because the Amended Complaint does not allege a disparate impact within Fell's office, she fails to satisfy her pleading burden.

### C. Plaintiffs' remaining CSRA claims fail.

To the extent Count Seven does not simply repeat Plaintiffs' failed First Amendment and Title VII claims, it accuses Defendants of "violat[ing] RIF procedures" and denying Plaintiffs (except for Smith) "protections and rights guaranteed by 5 C.F.R. pt. 351." Am. Compl. ¶ 282.a. Though unclear,

it appears that Plaintiffs are referring to their allegations that the RIF impermissibly targeted individuals rather than positions, *id.* ¶ 123, and that Defendants resorted to a RIF without trying to reassign them instead, *id.* ¶¶ 129-33.

These allegations fail to state a claim. Plaintiffs do not plausibly allege that the RIF targeted employees rather than positions—none alleges that his or her position was subsequently filled by someone else after their removal from that position, and from federal service entirely. Plaintiffs also identify no procedure, protection, or right that required their employing agencies to attempt to reassign them. Section 3 of the CSRA (entitled "Findings and Statement of Purpose") contains no such requirement. It simply declares that it is the "policy of the United States" that "the training program of the Government should include retraining of employees for positions in other agencies to avoid separations during reductions in force." Pub. L. 95-454, 92 Stat. 1111. Plaintiffs' reliance on 5 C.F.R. § 351.302 is equally misplaced. It applies only to a RIF that is "made in connection with the transfer of any or all of the functions of a competitive area to another competitive area." 5 C.F.R. § 351.302(a). Plaintiffs' job functions were eliminated, not transferred to another agency. Nor do Plaintiffs point to any language in OPM's (nonbinding) Handbook that purports to impose the limitation Plaintiffs seek. Indeed, even Plaintiffs are unable to forthrightly claim that agencies are required to reassign rather than separate employees. Am. Compl. ¶ 130 (alleging that "agencies are advised to reassign [federal workers] to other positions . . . rather than allow workers to be separated from federal service.").

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court grant their motion to dismiss.

Dated:  April 6, 2026                                    Respectfully submitted,

                                                         BRETT A. SHUMATE
                                                         Assistant Attorney General
                                                         Civil Division

17

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ Kian K. Azimpoor
KIAN K. AZIMPOOR (D.C. Bar No. 90024613)
NOAH T. KATZEN (D.C. Bar No. 1006053)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel:  (202) 598-0860;  Fax:  (202) 616-8470
E-mail:  kian.k.azimpoor@usdoj.gov

*Counsel for Defendants*

18