# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEPHANIE FELL, *et al.*,<br><br>               Plaintiffs,<br><br>      v.<br><br>DONALD J. TRUMP,<br>*in his official capacity as*<br>*President of the United States,*<br>*et al.*<br><br>               Defendants. | Case No. 1:25-cv-04206 |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
# CERTIFICATION

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT ..................................................................................................................... 3

    I.     IN LIGHT OF DEFENDANTS' MOTION TO DISMISS, THE COURT
          SHOULD DENY CLASS CERTIFICATION WITHOUT PREJUDICE. ............. 3

    II.    PLAINTIFFS HAVE NOT ESTABLISHED NUMEROSITY. ............................ 5

    III.   PLAINTIFFS HAVE NOT ESTABLISHED COMMONALITY. ......................... 8

    IV.   PLAINTIFFS HAVE NOT ESTABLISHED TYPICALITY.............................. 10

    V.    PLAINTIFFS HAVE NOT ESTABLISHED ADEQUACY. .............................. 12

    VI.   PLAINTIFFS HAVE NOT SHOWN THAT A RULE 23(b)
          REQUIREMENT IS MET. ................................................................................. 12

    VII.  THE COURT SHOULD DENY CERTIFICATION UNDER RULE
          23(C)(4). ........................................................................................................... 15

CONCLUSION................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**                                                             **PAGE(S)**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................................. 13, 14

*Brown v. District of Columbia,*
928 F.3d 1070 (D.C. Cir. 2019) ..................................................................................8

*Brown v. Marsh,*
777 F.2d 8 (D.C. Cir. 1985) .....................................................................................10

*Bunn v. D.C.,*
306 F.R.D. 68 (D.D.C. 2015) .............................................................................. 6, 7

*Bynum v. District of Columbia,*
214 F.R.D. 27 (D.D.C. 2003) .................................................................................5-6

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) .............................................................................. 14, 15

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ............................................................................................ 3, 14

*Cooper v. Fed. Rsrv. Bank of Richmond,*
467 U.S. 867 (1984). ........................................................................................ 5, 8

*DL v. District of Columbia,*
713 F.3d 120 (D.C. Cir. 2013) ........................................................................... 8, 9

*DL v. District of Columbia,*
860 F.3d 713 (D.C. Cir. 2017) ..................................................................................7

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez,*
431 U.S. 395 (1977) ..................................................................................................11

*Garcia v. Johanns,*
444 F.3d 625 (D.C. Cir. 2006) ...................................................................................8

*Gen. Tel. Co. of Nw., Inc. v. EEOC,*
446 U.S. 318 (1980) ....................................................................................................5

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ........................................................................................9, 10, 12

*Howard v. Liquidity Servs. Inc.*,
   322 F.R.D. 103 (D.D.C. 2017)..............................................................................................7

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ..............................................................................................13, 14, 15

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019)....................................................................................... 7-8

*Love v. Johanns*,
   439 F.3d 723 (D.C. Cir. 2006)............................................................................................8

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)..............................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................*passim*

*White v. Univ. of Washington*,
   2024 WL 1241063 (W.D. Wash. Mar. 22, 2024) .............................................................10

**STATUTES**

5 U.S.C. §§ 3101, 301.............................................................................................................10

**FEDERAL RULE**

Fed. R. Civ. P. 23 ............................................................................................................*passim*

**INTRODUCTION**

The named Plaintiffs in this putative class action are eight former federal employees who were removed from their positions at seven different agencies or sub-agencies. They assert shared legal claims despite sharing few commonalities with one another: they had different employers, supervisors, and job duties; they were removed by different decision-makers based on different factual records and personnel histories; and they presumably seek different remedies based on their unique circumstances. Yet at the same time, they seek to certify and represent an exceptionally broad class and two wide-sweeping subclasses against twenty-seven agency and sub-agency Defendants—twenty of which did not employ any Plaintiff. To justify the scope of their proposed class, they contend that two Executive Orders and United States Office of Personnel Management ("OPM") guidance provide the "glue" necessary to collapse all those varied circumstances into a single class proceeding. But Federal Rule of Civil Procedure 23 requires Plaintiffs to prove that the proposed class members suffered the same injury, that their claims depend on at least one common contention capable of classwide resolution, and that common issues predominate over the individualized questions that will necessarily drive liability and relief. They have not done so. Class certification should be denied for at least four independent reasons.

*First*, Plaintiffs' motion for class certification should be denied without prejudice pending the Court's decision on Defendants' motion to dismiss. If granted in its entirety, that motion would end this case, thereby eliminating any need to decide class certification. But even were it granted only in part, it would narrow the case in ways that would defeat class certification, narrow the scope of any class, or limit the claims to be decided on a class-wide basis. For example, were the Court to dismiss those Defendants whom no named Plaintiff has standing to sue, it is unclear whether Plaintiffs could satisfy Rule 23's numerosity requirement. The same would be true should the Court dismiss Plaintiffs' advocacy-based Title VII claim, which would eliminate any basis for jurisdiction over any white male

putative class member. In short, Plaintiffs' motion for class certification is premature, and denying it without prejudice pending resolution of Defendants' motion to dismiss would serve the interests of judicial economy and conserve party and judicial resources.

*Second*, in any event, Plaintiffs have not established commonality. The central question in this case is whether any employee was subjected to an actionable constitutional, statutory, or civil service violation based on Executive Branch directives. That inquiry cannot be answered "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It turns on individualized facts. Rule 23 does not permit certification merely because all putative class members invoke the same legal provisions or point to the same Executive Branch directives. Even accepting Plaintiffs' premise that the anti-DEIA Executive Orders and OPM memoranda were government-wide, that premise does not answer the dispositive Rule 23 question of whether common proof will generate common answers as to class membership, causation, liability, exhaustion, defenses, and relief for all proposed class members.

*Third*, Plaintiffs have not established typicality and adequacy for similar reasons. The named Plaintiffs worked in different agencies, held different positions, pursued different administrative routes, and assert different combinations of claims. Some Plaintiffs pursue mixed-case theories, based on the Civil Service Reform Act of 1978 ("CSRA"), tied to Merit Systems Protection Board ("MSPB") appeals; another proceeds through agency Equal Employment Opportunity ("EEO") exhaustion; some assert race-based claims; and others allege gender-based claims. Those differences go directly to defenses and remedies. And Plaintiffs cannot cure those fractures by assembling multiple named representatives and treating them as a substitute for a cohesive class.

*Fourth*, Plaintiffs have not satisfied any Rule 23(b) factor. Rule 23(b)(2) does not authorize certification where (as here) the requested relief turns on employee-by-employee determinations or where monetary relief is more than merely incidental. Plaintiffs cannot establish that any common issues predominate under Rule 23(b)(3). Class certification would lead to a series of mini-trials over

who was actually affected, how, why, under what agency specific process, whether the employee had reassignment rights, whether the employee was in fact separated pursuant to the challenged directives, whether comparators exist, whether the employee engaged in protected advocacy or was perceived to have done so, whether any adverse action was caused by race, sex, or perceived political affiliation, whether any mixed-case prerequisites were satisfied, and what remedy is appropriate. Those are not merely remedial questions to be deferred to a later phase. They bear directly on class membership, liability, causation, exhaustion, and available defenses from the outset.

For those reasons, as set out below, the motion for class certification should be denied.

## STANDARD OF REVIEW

A party seeking class certification must affirmatively demonstrate compliance with Rule 23. *Dukes*, 564 U.S. at 350. Rule 23 does not set forth a mere pleading standard; rather, the district court must conduct a rigorous analysis even if that analysis overlaps with the merits to the extent necessary to determine whether Rule 23's prerequisites are satisfied. *Id.* at 350-51; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). To meet its burden, a party seeking class certification must satisfy each of the Rule 23(a) requirements (numerosity, commonality, typicality, and adequacy), as well as one of the Rule 23(b) factors—such as that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole, Fed. R. Civ. P. 23(b)(2), or that common questions of law or fact predominate, Fed. R. Civ. P. 23(b)(3).

## ARGUMENT

## I.    IN LIGHT OF DEFENDANTS' MOTION TO DISMISS, THE COURT SHOULD DENY CLASS CERTIFICATION WITHOUT PREJUDICE.

The Court should deny class certification, without prejudice, because the Court has yet to rule on Defendants' motion to dismiss. "Rule 23 does not set forth a mere pleading standard," and in some cases it is "necessary for the court to probe behind the pleadings before coming to rest on the

3

certification question." *Dukes*, 564 U.S. at 350-51 (discussing certification regarding Title VII claims) (citation omitted). Defendants have moved to dismiss the Amended Complaint by arguing that the pleading is deficient. ECF No. 76. As that motion explains, there are ample grounds for dismissing the Amended Complaint or, failing that, substantial portions of it. *Id.* In these circumstances, it would be premature and inefficient to resolve Plaintiffs' motion for class certification before the Court first determines what claims, parties, and theories—if any—remain in the case.

*First*, Plaintiffs cannot show numerosity before this Court has decided which Defendants (if any) are proper. As detailed in the motion to dismiss, twenty of the twenty-seven named Defendant agencies and sub-agencies did not employ any of the eight named Plaintiffs and thereby had no role in their removals. For that reason, no named Plaintiff has standing to sue them. If the improperly named Defendants are dismissed, the proposed class will necessarily narrow, and Plaintiffs would then have to demonstrate that the remaining proposed class is still so numerous that joinder is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

*Second*, Plaintiffs cannot demonstrate that any of the Rule 23 requirements are met until this Court decides whether and to what degree Plaintiffs have satisfied exhaustion requirements. The facts relevant to exhaustion (a jurisdictional requirement under the CSRA) differ from Plaintiff to Plaintiff: some exhausted First Amendment claims but not discrimination claims; some exhausted discrimination claims but not First Amendment claims; some exhausted certain discrimination claims but not others; and one did not exhaust *any* claims. First Am. Class Action Compl. for Inj. and Declaratory Relief and Damages ("Am. Compl.") ¶¶ 18-25, ECF No. 8. Those differences have clear implications for whether class certification is proper, including whether the class meets the numerosity requirement.

*Third*, even apart from exhaustion, Plaintiffs cannot demonstrate that any of the Rule 23 requirements are met before the Court has decided what claims, if any, are viable and well-pleaded.

4

As the motion to dismiss explains, no Plaintiff plausibly alleges a First Amendment violation; no Plaintiff has a Title VII cause of action against any Defendant other than the head of the Plaintiff's employing agency; Title VII does not recognize Plaintiffs' "advocacy" theory of discrimination, *Dukes*, 564 U.S. at 352 (explaining that "the crux of a Title VII inquiry is 'the reason for a particular employment decision'" (quoting *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. at 876)); Plaintiffs' allegations of disparate treatment and disparate impact are too threadbare to satisfy their pleading burden; and Plaintiffs do not identify any violation of a civil service right under the CSRA. Which claims (if any) are properly before the Court will necessarily affect the size of the proposed class. For example, if Plaintiffs' "advocacy" theory of discrimination is dismissed, then no white male member of the proposed class will have a Title VII discrimination claim. And if no white male member of the proposed class has a Title VII discrimination claim, then no such member can bring a "mixed case" under the CSRA—and thus this Court would lack jurisdiction over the claims of white male members of the proposed class. Deciding which claims are properly before the Court will also determine whether joinder is impracticable, whether Plaintiffs can show commonality between the named Plaintiffs and class members, whether the remaining named Plaintiffs are typical of the class, whether relief is appropriate for the class as a whole, and whether any common issues predominate.

The Court should therefore deny Plaintiffs' motion for class certification without prejudice. The Court should first decide Defendants' motion to dismiss. If any claim survives that motion, Plaintiffs can refile their motion at that time by tailoring their attempts to satisfy Rule 23 requirements to the case as narrowed by this Court's ruling.

## II. PLAINTIFFS HAVE NOT ESTABLISHED NUMEROSITY.

Plaintiffs fail to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Because numerosity depends on the "specific facts of each case," *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), Plaintiffs can meet their burden

5

only if they provide a "reasonable basis" for their estimate of class size, *Bynum v. District of Columbia*, 214 F.R.D. 27, 32-33 (D.D.C. 2003) (citation omitted), and show that joinder is impracticable, *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 75–76 (D.D.C. 2015). Plaintiffs do neither.

*First*, Plaintiffs provide no reasonable basis on which to determine the actual class size. As explained above, the number of class members will depend on which agencies, sub-agencies, and agency or sub-agency heads are properly Defendants in this case. Because the Court lacks jurisdiction to proceed with claims against those Defendants that did not employ the named Plaintiffs, Plaintiffs must satisfy numerosity with respect to a class limited to former employees of the agency and sub-agency Defendants that Plaintiffs arguably have standing to sue. Because Plaintiffs have not, at this stage, attempted to make such a showing, their motion should be denied.

Even assuming the class may include former employees of agencies that did not employ one of the named Plaintiffs, there is no reasonable basis on which to estimate the class size. Plaintiffs define the putative class as federal employees who, prior to judgment, were "subject to separation from the federal government pursuant to the anti-DEIA EOs and OPM's implementing directives[,]" and they separately propose gender and race/ethnicity subclasses. Pls.' Class Cert. Mot. 2-3. That definition requires individualized determinations for each putative class member: whether the employee was in fact "subject to separation," whether any such separation occurred "pursuant to" the challenged Executive Orders and OPM directives, and whether the employee falls within one or more proposed subclasses. *Id.* at 2-3, 17-20. Similarly, estimating the size of the subclasses requires additional individualized determinations concerning sex, race, ethnicity, advocacy, perceived advocacy, and causation. *Id.* at 2-3, 25-28. Plaintiffs have not shown, with competent proof, how many individuals fall within either subclass as defined. *See Bynum*, 214 F.R.D. at 32-33. For example, Plaintiffs provide no basis whatsoever for estimating how many members of the proposed class are white male employees and thereby would not fall within either subclass.

6

*Second*, Plaintiffs make no showing that joinder would be impracticable. They vaguely invoke geographic dispersion, limited resources, fear of retaliation, and the possibility of identifying putative class members through government records. But they do not attempt to show that class members' limited resources or fear of retaliation really does pose an obstacle to joinder in this case. Mot. for Class Cert. and Appointment of Counsel and Supporting Mem. of Law ("Pls.' Class Cert. Mot.") 19-20, ECF No. 70. And the only evidence they provide of significant geographic dispersion is that one named Plaintiff signed a declaration in Maine. *See* Pls.' Class Cert. Mot. 19. They neglect that the other seven named Plaintiffs signed their declarations in Washington, D.C., Maryland, or Virginia. Carrillo-Figueroa Decl. 4, ECF 70-2; Fell Decl. 4, ECF No. 70-3; Gilliard Decl. 4, ECF No. 70-4; Jensen Decl. 4, ECF No. 70-5; Laboy Decl. 4, ECF No. 70-6; Oliver Decl. 4, ECF No. 70-7; Smith Decl. 4, ECF No. 70-8. In any event, geographic dispersion and similar practical considerations cannot make up for the absence of evidence that the proposed class itself is numerous. *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 117 (D.D.C. 2017); *see also Coleman*, 306 F.R.D. at 76-77.

Nor does the possibility that records might later identify putative class members establish numerosity now. Plaintiffs bear the burden of affirmatively demonstrating Rule 23 compliance on the present record, and they cannot satisfy that burden by asserting that the Government likely possesses information that might sharpen their estimates later. *See Dukes*, 564 U.S. at 350-51; *see also DL v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017). The same is true of Plaintiffs' reliance on limited resources and fear of retaliation. Even assuming some putative class members may be reluctant to sue individually, that does not relieve Plaintiffs of their obligation to show that the class and subclasses they seek to certify are actually numerous. *See Howard*, 322 F.R.D. at 117; *see also Coleman*, 306 F.R.D. at 76-77. And, just as in this case, if the proposed class spans different agencies, positions, and administrative processes, those asserted practical difficulties underscore the individualized nature of the inquiry rather than supporting class treatment. *See Dukes*, 564 U.S. at 349-50; *see also J.D. v. Azar*,

925 F.3d 1291, 1321-22 (D.C. Cir. 2019). Plaintiffs' alternative request for pre-certification discovery on numerosity should be denied because any discovery would not avoid the problem that, as Plaintiffs have defined the class, numerosity cannot be estimated without individualized determinations.

### III.    PLAINTIFFS HAVE NOT ESTABLISHED COMMONALITY.

Plaintiffs also fail to establish commonality under Rule 23(a)(2). To do so, they must identify a common contention "of such a nature that it is capable of classwide resolution" such that deciding its truth or falsity "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *accord DL v. District of Columbia*, 713 F.3d 120, 125-27 (D.C. Cir. 2013) (citation omitted). What matters is whether common proof will generate a common answer to the question at the heart of each class member's claim. *See Dukes*, 564 U.S. at 350; *see also Brown v. District of Columbia*, 928 F.3d 1070, 1080-82 (D.C. Cir. 2019).

That is not the case here. For each putative class member, the Court will still have to determine whether the employee was in fact "subject to separation" pursuant to the challenged directives, whether the challenged action instead reflected agency specific implementation or other lawful considerations, whether the employee exhausted his or her administrative remedies, and whether the employee suffered a legally actionable injury under the distinct standards governing the First Amendment, Title VII, or the CSRA. *See, e.g.*, Pls.' Class Cert. Mot. 2-3; *Dukes*, 564 U.S. at 352 (explaining that "[t]he crux of a Title VII inquiry is 'the reason for a particular employment decision'" (quoting *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 876 (1984))); *Garcia v. Johanns*, 444 F.3d 625, 632-35 & n.11 (D.C. Cir. 2006); *Love v. Johanns*, 439 F.3d 723, 730-31 (D.C. Cir. 2006). The same defect defeats Plaintiffs' subclass theories. Whether any employee falls within the proposed gender or race/ethnicity subclass, and whether any challenged action was allegedly based on sex, race, ethnicity, advocacy, or perceived advocacy, likewise depends on individualized proof. In short, Plaintiffs cannot obtain class certification merely by pointing to Executive Branch directives when liability still turns on

employee-by-employee proof of causation, motive, and injury. *See Dukes*, 564 U.S. at 352-56; *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-59 (1982).

To be sure, Plaintiffs argue that all members of the proposed class allege that the same Executive Orders and OPM guidance were unlawful. Pls.' Class Cert. Mot. 3, 20-25. But to satisfy commonality, there must be "[s]ignificant proof" that the Executive Orders and guidance operated the same way across the proposed class. *See Falcon*, 457 U.S. at 157-59 & n.15; *see also Dukes*, 564 U.S. at 352-55. "After *Dukes* it is clear that defining the class by reference to" a government policy alleged to be unlawful "speaks too broadly because it constitutes only an allegation that the class members 'have all suffered a violation of the same provision[s] of law[.]'" *DL*, 713 F.3d at 125-26 (quoting *Dukes*, 564 U.S. at 350). Here, the proposed class spans multiple agencies, decisionmakers, factual circumstances, and legal theories. The same alleged directives may have had different consequences for different employees. Some Plaintiffs were allegedly still in DEIA-related positions at the time of their RIFs; others, according to Plaintiffs' pleadings and class-certification motion, had already been reassigned to non-DEIA roles or were identified based on prior DEIA-related work. Am. Compl. ¶¶ 21, 23-25, 138-140; Pls.' Class Cert. Mot. 12-16, 25-28. Some Plaintiffs alleged Title VII theories tied to sex, race, ethnicity, advocacy, or perceived advocacy while others alleged different combinations of First Amendment and CSRA claims. Am. Compl. ¶¶ 18-25; Pls.' Class Cert. Mot. 2-3, 25-28. Those differences mean the Court cannot answer, for all class members in one stroke, the central question identified in *Dukes*: "why was I disfavored[?]" 564 U.S. at 352. Even assuming that the challenged directives reflected hostility toward DEIA-related work, that would not establish, for every class member, that they were separated because of perceived political affiliation, sex, race, ethnicity, or protected advocacy; that the employing agency implemented the directives in a legally actionable manner; that the employee satisfied the relevant exhaustion requirements; or that the employee is entitled to relief.

Regardless of whether *any* class could be drawn, a cross-agency class of employment claims is effectively a legal impossibility. Each agency head has authority to manage its own affairs, including the hiring and firing of employees, independently of other agencies. *See* 5 U.S.C. §§ 3101, 301. Across the government, there are too many decision makers and decisions to claim commonality in action between agencies. *See, e.g., White v. Univ. of Washington*, 2024 WL 1241063, at *13 (W.D. Wash. Mar. 22, 2024) (dismissing class claim involving "separate employers with differing employment policies" because there was "a rational basis for distinguishing between" employees who worked for different entities). Agencies' authority and discretion over exhaustion and alternative dispute resolution compounds the difficulty. *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) ("Congress wanted to give *each agency* the opportunity as well as the responsibility to right any wrong that it might have done.") (citation modified, emphasis added).

## IV.    PLAINTIFFS HAVE NOT ESTABLISHED TYPICALITY.

Plaintiffs likewise fail to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). That requirement is not met where the named Plaintiffs' claims are so varied that no one representative's claim is representative of the proposed class. *See Falcon*, 457 U.S. at 157-59; *see also Dukes*, 564 U.S. at 349 n.5. As the Supreme Court has explained, Rule 23(a)'s commonality and typicality requirements "tend to merge" and "serve as guideposts" for determining whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected," thereby limiting class claims to those "fairly encompassed by the named plaintiff's claim." *Dukes*, 564 U.S. at 349 & n.5; *Falcon*, 457 U.S. at 156-57 & n.13.

Here, no named Plaintiff is typical of the proposed class as a whole. As already explained, the named Plaintiffs' claims arise from materially different employment circumstances, administrative tracks, and asserted injuries. Seven named Plaintiffs pursue CSRA-based claims tied to MSPB

10

proceedings, while the eighth (Smith) proceeds through the agency EEO process on her Title VII claims and through OSC on her First Amendment claim. Am. Compl. ¶¶ 18-25, 241-42. And Plaintiffs confirm that the named Plaintiffs were not even similarly situated at the time of the challenged actions, as some had already been reassigned out of DEIA-related roles before receiving RIF notices, while others allegedly remained in such roles or were identified based on current or prior DEIA-related assignments. Pls.' Class Cert. Mot. 12-16.

Those differences go directly to the elements of liability, the defenses available to Defendants, and the nature of any relief. Whether a particular Plaintiff can proceed may turn on distinct questions of exhaustion, jurisdiction, causation, available remedies, and class membership. A Plaintiff whose claim turns on reassignment from one agency component cannot stand in for an employee who was never reassigned. A Plaintiff pursuing a mixed-case MSPB theory cannot represent an employee proceeding solely through Title VII administrative exhaustion. And a Plaintiff whose claim depends on one set of facts bearing on perceived political affiliation or protected advocacy cannot be said to present the same claim, in representative form, as absent class members whose claims depend on materially different facts. Because the named Plaintiffs' claims arise from materially different factual circumstances, administrative regimes, and legal theories, Plaintiffs have not shown that the representatives "possess the same interest and suffer the same injury" as the absent class members. *Dukes*, 564 U.S. at 348-49 & n.5 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Typicality is therefore absent.

## V.       PLAINTIFFS HAVE NOT ESTABLISHED ADEQUACY.

Next, Plaintiffs fail to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). That inquiry substantially overlaps with typicality because the named representatives must be sufficiently aligned with absent class members to protect their interests in litigating the same claims. *See Dukes*, 564 U.S. at 349; *see also Falcon*, 457 U.S. at 157

11

n.13. All the differences between individual employees' claims described above demonstrate that the named Plaintiffs cannot adequately represent the interests of unnamed class members or subclass members.

## VI.    PLAINTIFFS HAVE NOT SHOWN THAT A RULE 23(b) REQUIREMENT IS MET.

Even if Plaintiffs could demonstrate that the Rule 23(a) prerequisites are satisfied, they have failed to show that any factor under Rule 23(b) supports class certification.

First, Plaintiffs argue that certification is proper under Rule 23(b)(2). But that provision applies only where "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. It does not authorize certification where class members would be entitled to different injunctions or declaratory relief. *Id.* at 360-61. Here, Plaintiffs seek precisely the sort of individualized relief that falls outside Rule 23(b)(2), such as reinstatement, back pay, lost benefits, compensatory damages, expungement, and other employee-specific equitable remedies. Pls.' Class Cert. Mot. 29-30. Whether any particular employee is entitled to reinstatement turns on individualized questions such as their former position, current agency structure, availability of comparable positions, assignment rights, mitigation, and feasibility of reinstatement. Back pay and benefits likewise require employee specific determinations concerning separation dates, interim earnings, mitigation, outside employment, and benefits calculations. Compensatory damages, if available, would be even more individualized because they depend on each employee's alleged injury and proof.

Plaintiffs contend that they seek class-wide declaratory and injunctive relief on liability with individualized monetary proceedings to follow if necessary. Pls.' Class Cert. Mot. 3, 29-30, 35-37. But even the equitable remedies they identify are not truly indivisible. Restoration of seniority, reinstatement to an "appropriate" position, and expungement of termination records all require

employee-specific adjudication of whether that person was unlawfully separated pursuant to the challenged directives, what position or equivalent placement is at issue, whether such a placement exists, what agency specific rules apply, and whether any defenses or procedural bars limit relief. Pls.' Class Cert. Mot. 28-30, 34-37. Those determinations are part of what makes Rule 23(b)(2) ill-suited here. *See id.* at 29-30, 34-37.

Nor can Plaintiffs avoid that problem by recasting these remedies as merely downstream consequences of class-wide liability. *Dukes* rejected certification under Rule 23(b)(2) where plaintiffs sought relief such as reinstatement or back pay that would require "additional proceedings . . . to determine the scope of individual relief." 564 U.S. at 365-66 (alteration in original) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 361 (1977)). And even in a pattern-or-practice case, the defendant remains entitled to individualized determinations and individualized defenses as to each employee's entitlement to relief. *See id.* at 366-68. That is precisely the problem here. The requested relief is not indivisible and would require employee-by-employee adjudication of both entitlement and remedy. Rule 23(b)(2) therefore does not permit certification.

Second, Plaintiffs contend that certification is proper under Rule 23(b)(3) because common issues of law or fact predominate. But the predominance requirement is "far more demanding" than the commonality requirement and turns on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (citation omitted). That standard is not met where the case turns on numerous "questions peculiar to" individual class members and the significance of those individualized issues outweigh any asserted common issues. *Id.* at 624. A court must decide that question through a "rigorous analysis" even if that inquiry overlaps with the merits. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-35 (2013). Courts repeatedly reject Rule 23(b)(3) certification where common background facts do not eliminate individualized questions of injury, causation, defenses, and damages. *See McLaughlin v. Am. Tobacco Co.*,

13

522 F.3d 215, 222-25, 231-33 (2d Cir. 2008); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744-45, 749-52 (5th Cir. 1996).

Nor can Plaintiffs satisfy Rule 23(b)(3) here. This case would require employee-by-employee adjudication of the following issues: whether a particular employee was in fact separated pursuant to the challenged directives; whether the employee worked in, previously worked in, or was merely perceived to be associated with DEIA-related work; whether the relevant decisionmakers perceived the employee's work or background as reflecting political affiliation or protected advocacy; whether race, sex, or ethnicity caused the challenged action; what agency specific RIF procedures applied; whether the employee had reassignment, retreat, or retention rights; whether those rights were denied; whether the employee exhausted the relevant administrative process; and whether any mixed case CSRA prerequisites were satisfied. *See Teamsters*, 431 U.S. at 360-62. Contrary to Plaintiffs' argument, these issues are not confined to relief but go to liability itself. A *Teamsters*-style remedial phase cannot cure a predominance problem where individualized issues permeate the antecedent liability inquiries. *See id.*

The same defect undermines Plaintiffs' reliance on common statistical and anecdotal evidence for the proposed gender and race/ethnicity subclasses. Pls.' Class Cert. Mot. 24-25, 32-34. Statistical proof may bear on broad patterns, but it does not eliminate individualized questions concerning subclass membership, theory of discrimination, causation, exhaustion, and available relief. *See Teamsters*, 431 U.S. at 339-40. Nor does Plaintiffs' motion clearly separate disparate impact claims from disparate treatment, advocacy, and perceived advocacy theories. Instead, it groups together theories that involve different elements, different proof, and different defenses, which further confirms that predominance is lacking. *See* Pls.' Class Cert. Mot. 22-25, 32-34. Further, a class action would not streamline this case; it would multiply the individualized disputes already embedded in it. Even if

14

Plaintiffs could identify some common questions about the Executive Orders or OPM memoranda, the Court would still need to resolve all the individualized inquiries described above.

## VII. THE COURT SHOULD DENY CERTIFICATION UNDER RULE 23(C)(4).

Rule 23(c)(4) does not rescue a case in which the allegedly certifiable issues are too abstract to materially advance the litigation. Severing issues concerning the legality or meaning of the Executive Orders or OPM memoranda would not eliminate the individualized inquiries that dominate this case. Even after resolution of any such issue, the Court would still have to determine, employee by employee, class membership, causation, agency implementation, exhaustion, and remedy. Issue certification is not a mechanism for isolating a few high-level questions while leaving the real work of the case to a long series of mini trials. *See Castano*, 84 F.3d at 745 n.21, 749-52.

The same problem is evident from Plaintiffs' own complaint and motion for class certification. Their proposed class spans multiple agencies and multiple factual scenarios, and they seek individualized relief including reinstatement, back pay, lost benefits, compensatory damages, and expungement. Pls.' Class Cert. Mot. 2-3, 29-30. Because resolution of any common issue would still leave the Court to adjudicate the dispositive questions employee-by-employee, Rule 23(c)(4) certification would not materially advance the litigation and should be denied.

**CONCLUSION**

Plaintiffs seek certification of an across-the-board class action that Rule 23 does not permit. They have not established numerosity for the class and subclasses they propose; they have not shown commonality, typicality, or adequacy in representative form; and they have not shown that this case

15

fits within Rule 23(b)(2), Rule 23(b)(3), or Rule 23(c)(4). Their alternative request for pre-certification

discovery should be denied. The Court should deny Plaintiffs' motion for class certification.


Dated:  April 6, 2026                          Respectfully submitted,

                                               BRETT A. SHUMATE
                                               Assistant Attorney General
                                               Civil Division

                                               CHRISTOPHER R. HALL
                                               Assistant Branch Director

                                               */s/ Kian K. Azimpoor*
                                               KIAN K. AZIMPOOR (D.C. Bar No. 90024613)
                                               NOAH T. KATZEN (D.C. Bar No. 1006053)
                                               Trial Attorneys
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street NW
                                               Washington, DC 20005
                                               Tel:  (202) 598-0860;  Fax:  (202) 616-8470
                                               E-mail:  kian.k.azimpoor@usdoj.gov

                                               *Counsel for Defendants*

16