**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEPHANIE FELL, *et al.*,<br><br>individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants.* | Case No. 1:25-cv-4206-TSC |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ..........................................................................................................1

II. ARGUMENT ................................................................................................................1

    A.  Defendants' Request to Stay Class Certification is Moot. ...............................1

    B.  The Proposed Class and Subclasses Satisfy All Rule 23(a) Requirements. ...................2

        1.  Numerosity Is Satisfied. ......................................................................2

        2.  Commonality Is Satisfied. ...................................................................4

        3.  Typicality Is Satisfied. .........................................................................9

        4.  Adequacy Is Satisfied. ...................................................................... 11

    C.  Class Certification Is Appropriate Under Rule 23(b). .................................... 11

        1.  The Proposed Class and Subclasses Satisfy Rule 23(b)(2). ............................. 11

        2.  Certification Under Rule 23(b)(3) Is Appropriate for Plaintiffs' Title VII and CSRA Claims for Damages. ................................. 13

            a.  Predominance Is Satisfied. ...................................................... 13

            b.  Superiority Is Satisfied. .......................................................... 16

    D.  Certification Under Rule 23(c)(4) Is Appropriate in the Alternative. ......................... 18

III. CONCLUSION ............................................................................................................ 19

## TABLE OF AUTHORITIES

Page

**Cases**

*Afghan & Iraqi Allies v. Pompeo,*
334 F.R.D. 449 (D.D.C. 2020) ..............................................................................................2, 11

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................................................13

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ..........................................................................................................2

*Barrett v. Whirlpool Corp.,*
556 F.3d 502 (6th Cir. 2009) ...........................................................................................13

*Brown v. Marsh,*
777 F.2d 8 (D.C. Cir. 1985) ...............................................................................................8

*Burton v. D.C.,*
277 F.R.D. 224 (D.D.C. 2011) ...........................................................................................4

*Bynum v. District of Columbia,*
214 F.R.D. 27 (D.D.C. 2003) .............................................................................................2

*Campbell v. Nat'l R.R. Passenger Corp.,*
311 F. Supp. 3d 281 (D.D.C. 2018) ...................................................................................2

*Castano v. American Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ....................................................................................... 16, 18

*Chen-Oster v. Goldman, Sachs & Co.,*
325 F.R.D. 55 (S.D.N.Y. 2018) ................................................................................. 10, 15

*Chicago Teachers Union, Local 1 v. Bd. of Edu. of the City of Chicago,*
307 F.R.D. 475 (N.D. Ill. 2015) ......................................................................................12

*Coleman through Bunn v. D.C.,*
306 F.R.D. 68 (D.D.C. 2015) .......................................................................................2, 13

*Curtin v. United Airlines,*
275 F.3d 88 (D.C. Cir. 2001) .............................................................................................2

*Davis v. District of Columbia,*
925 F.3d 1249 (D.C. Cir. 2019) .......................................................................................14

## TABLE OF AUTHORITIES
### (Continued)

Page

*DL v. District of Columbia*,
302 F.R.D. 1 (D.D.C. 2013) ................................................................................................12

*DL v. District of Columbia*,
713 F.3d 120 (D.C. Cir. 2013) ..............................................................................................5

*DL v. District of Columbia*,
860 F.3d 713 (D.C. Cir. 2017) ............................................................................................11

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ....................................................................................6, 15

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) .......................................................................................2, 3

*Fell v. Dep't of Homeland Sec.*,
DC-0351-25-2879-I-1 .......................................................................................................3, 14

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .............................................................................................................10

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ................................................................................................7

*Harris v. Bessent*,
Nos. 25-5037, 25-5055, 25-5057 (D.C. Cir. Mar. 27, 2025) ...............................................7

*Harris v. Med. Transportation Mgmt., Inc.*,
77 F.4th 746 (D.C. Cir. 2023) ..................................................................................5, 15, 18

*In re High-Tech Employee Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) .............................................................................6, 10

*In re High-Tech Employee Antitrust Litigation*,
289 F.R.D. 555 (N.D. Cal. 2013) .........................................................................................6

*Hill v. City of New York*,
No. 13CV6147PKCJO, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ...............................14

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977) .............................................................................................................15

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ............................................................................................9

**TABLE OF AUTHORITIES**
(Continued)

Page

*Jones v. Chopra,*
No. CV 18-2132 (BAH), 2023 WL 6037295 (D.D.C. Sept. 15, 2023) ..................................... 14, 15

*La Mar v. H & B Novelty & Loan Co.,*
489 F.2d 461 (9th Cir. 1973) ............................................................................................................4

*Leyva v. Medline Indus. Inc.,*
716 F.3d 510 (9th Cir. 2013) ...........................................................................................................7

*Little v. Washington Metro. Area Transit Auth.,*
249 F. Supp. 3d 394 (D.D.C. 2017) ..............................................................................................7, 10

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.,*
422 F. Supp. 3d 194 (D.D.C. 2019) .................................................................................................7

*McLaughlin v. American Tobacco Co.,*
522 F.3d 215 (2d Cir. 2008) ...........................................................................................................16

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
672 F.3d 482 (7th Cir. 2012), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.,* 828 F.3d 541 (7th Cir. 2016) .......................................................................... 6, 8, 18

*Meijer, Inc. v. Warner Chilcott Holdings Co. III,*
246 F.R.D. 293 (D.D.C. 2007) .......................................................................................................17

*Messner v. Northshore Univ. HealthSystem,*
669 F.3d 802 (7th Cir. 2012) ...........................................................................................................7

*Moore v. Comfed Sav. Bank,*
908 F.2d 834 (11th Cir. 1990) .........................................................................................................4

*Moore v. Napolitano,*
926 F. Supp. 2d 8 (D.D.C. 2013) ...................................................................................................15

*N.S. v. Hughes,*
335 F.R.D. 337 (D.D.C. 2020), *modified on clarification sub nom. N.S. v. Dixon,* No. 1:20-CV-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) ...........................................9

*Pappas v. D.C.,*
No. CV 19-2800 (RC), 2024 WL 1111298 (D.D.C. Mar. 14, 2024) .......................................... 4, 7, 9

*Parra v. Bashas', Inc.,*
291 F.R.D. 360 (D. Ariz. 2013) ...................................................................................................6, 15

*Payton v. Cnty. Of Kane,*
308 F.3d 673 (7th Cir. 2002) ...........................................................................................................3

# TABLE OF AUTHORITIES
## (Continued)

Page

*Roach v. T.L. Cannon Corp.*,
　778 F.3d 401 (2d Cir. 2015) ...................................................................................................7

*Stephens v. Farmers Rest. Grp.*,
　329 F.R.D. 476 (D.D.C. 2019) ..............................................................................................13

*Taylor v. D.C. Water & Sewer Auth.*,
　205 F.R.D. 43 (D.D.C. 2002) ................................................................................................16

*United States v. Trucking Emp., Inc.*,
　75 F.R.D. 682 (D.D.C. 1977) .................................................................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ..................................................................................................... 1, 4, 5, 7

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
　722 F.3d 838 (6th Cir. 2013).................................................................................................7

*White v. University of Washington*,
　No. 2:22-CV-01798-TL, 2024 WL 1241063 (W.D. Wash. Mar. 22, 2024)..........................................8

**Statutes**

5 U.S.C. §§ 3101, 301...............................................................................................................7

42 U.S.C. § 1981.....................................................................................................................15

New York City Human Rights Law..........................................................................................15

**Court Rules**

Fed. R. Civ. P. 23 ............................................................................................................*passim*

Fed. R. Civ. P. 23(a)....................................................................................................... 1, 2, 16

Fed. R. Civ. P. 23(b) ..............................................................................................................11

Fed. R. Civ. P. 23(b)(2).....................................................................................................11, 12

Fed. R. Civ. P. 23(b)(3).................................................................................................11, 13, 16

Fed. R. Civ. P. 23(c)(4).........................................................................................................18

Fed. R. Civ. P. 23(g)..............................................................................................................19

**TABLE OF AUTHORITIES**
(Continued)

Page

**Other Authorities**

2 William B. Rubenstein, *Newberg on Class Action* § 4:28 (6th ed. 2025) ....................................................11

**Regulations**

Executive Order 14151 .........................................................................................................................17

Executive Order 14173 .........................................................................................................................17

**Constitutions**

First Amendment ...............................................................................................................................3, 18

## I.    INTRODUCTION

Defendants' opposition to class certification is built on the mistaken belief that this case involves individual employment disputes—each turning on employee-level personnel records and testimony. Defendants are wrong. This litigation presents a quintessential fact pattern for certification of an employee Class. All Class members were subject to the same express government-wide policy, enacted by the President and implemented through centralized directives covering all agencies, with a singular purpose: to identify, target, and eliminate from federal service employees whom the Administration deemed associated with diversity, equity, inclusion, and accessibility ("DEIA"). As described below and in Plaintiffs' motion for class certification,[1] Dkt. 70 ("Mot."), Plaintiffs satisfy every Rule 23 requirement. Plaintiffs' motion for class certification should be granted.

## II.    ARGUMENT

### A.    Defendants' Request to Stay Class Certification is Moot.

Defendants argue that the Court should defer class certification pending resolution of their motion to dismiss. *See* Dkt. 77 ("Opp.") at 3-5. Respectfully, Defendants previously asked for this same relief and were told no. *See* Dkt. 75 at 3 (Defendants' request that "the Court should stay briefing on Plaintiffs' motion for class certification *until it has resolved Defendants' forthcoming motion to dismiss*") (emphasis added); Apr. 3, 2026 Minute Order (rejecting Defendants' request to stay class certification briefing and first render decision on motion to dismiss). Citing *Wal-Mart Stores, Inc. v. Dukes,* Defendants argue that the Court must decide claim viability before certifying a class. Opp. at 4-5. But *Wal-Mart* only requires merits determinations *if necessary* to assess Rule 23(a). *See* 564 U.S. 338, 350 (2011). Full merits evaluations are otherwise inappropriate at certification and disfavored in

---

[1] All defined terms take their definitions from Plaintiffs' Motion for Class Certification and Appointment of Counsel and Supporting Memorandum of Law. *See* Dkt. 70.

this Circuit. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-466 (2013); *Curtin v. United Airlines*, 275 F.3d 88, 93 (D.C. Cir. 2001) ("[I]t is often more efficient and fairer to the parties to decide the class question first."); *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 458 (D.D.C. 2020) ("[I]n determining whether to certify a class, a court may not examine whether plaintiffs have stated a cause of action or will prevail on the merits") (internal quotation marks omitted)); *see also Campbell v. Nat'l R.R. Passenger Corp.,* 311 F. Supp. 3d 281, 327 n.5 (D.D.C. 2018) (recognizing that addressing class certification before legal merits is "ordinary course" in this Circuit).

To the extent that Defendants' stay arguments otherwise relate to a Rule 23 element, they are addressed below.

### B.       The Proposed Class and Subclasses Satisfy All Rule 23(a) Requirements.

Plaintiffs meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

### 1.       Numerosity Is Satisfied.

Defendants argue that Plaintiffs provide "no reasonable basis on which to determine the actual class size" and that Plaintiffs have not shown joinder is impracticable. Opp. at 5-7.  But numerosity does not require an exact count. Plaintiffs need only provide a "reasonable basis" for the Court to "find an approximation of the size of the class," which Plaintiffs have done here. *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 76 (D.D.C. 2015); *see also Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 58 (D.D.C. 2025) (courts "need only find an approximation of the size of the class, not an exact number of putative class members").  Joinder is generally considered impracticable when a class size exceeds 40 class members. *See Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003).

Here, the evidence so far makes clear that the sizes of the proposed Class and Subclasses readily exceed the threshold for impracticability of joinder. For example, the Department of

Homeland Security (DHS) alone has identified at least 134 Class members. *See* Mot. at 14 (describing DHS personnel records showing 134 employees subjected to anti-DEIA reduction in force); Dkt. 70-1, Ex. 21 (Human Res. Mgmt. & Servs. Retention Register OIDO CRCL & CISOMB Supplemental Doc. Production 073-775, produced in *Fell v. Dep't of Homeland Sec.*, DC-0351-25-2879-I-1 (Merit Sys. Prot. Bd., Wash. Reg. Off.)). In addition, Plaintiffs supplemented this evidence with their own sworn testimony regarding more than forty Subclass members,[2] as well as public reporting indicating that there are potentially thousands of Class members across the federal government. *See* Mot. at 14-18; *Escobar Molina*, 811 F. Supp. at 57-58 (numerosity satisfied based in part on public news reporting that ICE made approximately 1,200 arrests over a six-week period). Defendants' claim that numerosity would be impacted if the Court dismissed Plaintiffs' advocacy theory of liability under Title VII (because no white men would then be Class members), *see* Opp. at 5-6, ignores the fact that white men will have First Amendment claims regardless of any ruling on their Title VII advocacy claims.

Likewise, Defendants are incorrect that Plaintiffs lack standing to sue on behalf of Class members working across agencies. Opp. at 4, 6. Under the juridical link doctrine, a plaintiff has standing on behalf of a class to sue similarly-situated defendants who collectively harmed the class members even if the class representative was not individually harmed by every defendant. *See Payton v. Cnty. Of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (concluding that "it is appropriate to join as defendants even parties with whom the *named* class representatives did not have direct contact" if all defendants "took part in a similar scheme" sustained by a common instrument or rule); *see also United States v. Trucking Emp., Inc.*, 75 F.R.D. 682, 689–90 (D.D.C. 1977) (holding that because "agreements bind the employment practices . . . the court believes that 'all defendants are juridically related in a

---

[2] *See generally* Dkt. 70-2 (Carrillo Decl.) ¶ 11; Dkt. 70-3 (Fell Decl.) ¶ 11; Dkt. 70-4 (Gilliard Decl.) ¶ 11; Dkt. 70-5 (Jensen Decl.) ¶ 12; Dkt. 70-6 (Laboy Decl.) ¶ 10; Dkt. 70-7 (Oliver Decl.) ¶ 12; Dkt. 70-8 (Smith Decl.) ¶ 11; Dkt. 70-9 (Stainnak Decl.) ¶ 11.

manner that suggests a single resolution of the (entire) dispute would be expeditious'" (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973))). The doctrine applies with particular force here, where all Defendants were *required* by Executive Branch leadership to take the common action that is the subject of this lawsuit—terminating Plaintiffs and Class members on the basis of their affiliation with DEIA—pursuant to the anti-DEIA EOs and OPM's implementing memoranda. These directives function as the equivalent of a "statute requiring common action by the defendants," establishing the very type of juridical link that courts have recognized "is appropriate to join as a defendant a party with whom the named class representative did not have a direct contact." *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990).

Defendants' other purported arguments against numerosity—*e.g.*, that class membership requires "individualized determinations," *see* Opp. at 5-7, is not a superior mechanism for resolving claims, *see id.* at 7, 11[3], or necessitates the presentation of evidence that Defendants alone possess, *see id.* at 6-7— "conflate[] the requirements of commonality and predominance with the requirement of numerosity." *Pappas v. D.C.,* No. CV 19-2800 (RC), 2024 WL 1111298, at *3 (D.D.C. Mar. 14, 2024); *see also Burton v. D.C.*, 277 F.R.D. 224, 230-31 (D.D.C. 2011) (lack of information is not a basis to deny numerosity, but at most supports ongoing discovery).

### 2.    Commonality Is Satisfied.

Defendants' challenge to commonality again misapplies *Wal-Mart* to the facts here. In *Wal-Mart*, the Supreme Court denied class certification where the plaintiffs challenged the discretionary employment decisions made by individual supervisors across 3,400 stores with *no uniform policy* connecting those decisions. 564 U.S. at 355-56. The Court found no "glue" holding the claims

---

[3] Defendants argue that Plaintiffs have not adequately shown joinder is impracticable because they have not demonstrated a fear of retaliation, a lack of resources, or sufficient geographic dispersion. Opp. at 11. Plaintiffs address this argument in the superiority section below.

together because the manager discretion was untethered to a corporate mandate. *Id.* at 352-55. By contrast, the "glue" here is explicit.

Specifically, the two anti-DEIA EOs and OPM implementing memoranda directed the adverse employment actions that are common to all Class members across the federal government. Unlike *Wal-Mart*, where millions of discretionary employment decisions by tens of thousands of managers had to be separately analyzed, this case challenges a common policy to terminate the DEIA employees. Each agency was obligated to follow this common directive. For example, on January 22, 2025, HHS Deputy Chief of Staff Scott Rowell sent an email to all HHS employees directing the closure of all DEIA offices, including the one at which Plaintiff Jensen worked, and stating that this was to be done in accordance with "President Trump's executive orders titled 'Ending Radical and Wasteful Government DEI Programs and Preferencing and Initial Rescissions of Harmful Executive Orders and Actions.'" Moldovan Decl. ISO Pls.' Class Cert. Reply, Ex. A (HHS DEIA Office Closure Email). Defendants' reliance on *DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013), Opp. at 9, is thus inapposite, as *DL* concerned a situation where there was no identifiable policy at all. And here, unlike *Wal-Mart*, an answer to the common question as to the legality of the challenged policy will answer the question for the Class as a whole. *Wal-Mart*, 564 U.S. at 352 ("Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*"); *see also Harris v. Med. Transportation Mgmt., Inc.*, 77 F.4th 746, 759 (D.C. Cir. 2023) (where "common contentions and proposed common answer[s] cut across all putative class members and depend on common evidence," commonality is satisfied).

Because the federal government has rarely, if ever, implemented a centralized policy targeting employees for termination across all agencies in this manner, there is a dearth of federal-sector authority with these facts. But private sector jurisprudence is instructive. For example, courts

have routinely certified classes of employees across large, multi-facility employers where a centralized policy guided the challenged conduct, even when individual locations had different managers, different operational practices, different workforces, or involved some exercise of discretion in implementing the policy guidance. *See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 487-92 (7th Cir. 2012), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016) (certifying class across 600 branch offices where two company-wide policies guided discretion and caused disparate impact); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 511 (N.D. Cal. 2012) (finding commonality in national class action where class members worked across different geographic regions throughout the country because they were all subject to a common, companywide promotion system); *Parra v. Bashas', Inc.*, 291 F.R.D. 360, 365-66 (D. Ariz. 2013) (certifying class across three different grocery chains where company-wide pay scales were challenged).

The government's personnel practices here are likewise significantly more centralized than those in employment class actions involving the alleged wage suppression of multiple independent companies subscribing to illicit no-recruiting agreements. In *In re High-Tech Employee Antitrust Litigation*, the court certified a class across seven separate technology companies that had entered into anti-solicitation agreements in order to avoid labor bidding wars across competitors that drove up compensation. 289 F.R.D. 555, 563-66 (N.D. Cal. 2013). The court found that wage suppression could be broadly disseminated even though the companies had separate leadership, HR departments, compensation policies, and decisionmakers. *See id.* at 565 (common issues predominated "regardless of job function, product group, or geography"); *see also In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (supplemental order granting class certification of Technical Class of approximately 60,000 employees across all seven companies and appointing five named plaintiffs).

Defendants argue that notwithstanding the common policy of which Plaintiffs here have provided ample evidence, commonality does not exist because the directives "may have had different consequences for different employees." Opp. at 9. But differences in damages do not defeat commonality. *See In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.,* 422 F. Supp. 3d 194 (D.D.C. 2019) (". . . mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification."); *see also Roach v. T.L. Cannon* Corp., 778 F.3d 401 (2d Cir. 2015) (same); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (same); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (same); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) (same); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) (same). Likewise, fact variations in the work histories and experiences across the class do not defeat commonality. *See Pappas*, 2024 WL 1111298, at *4 ("[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."); *Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 419 (D.D.C. 2017) (finding commonality despite the fact that class members applied for "myriad positions" because they were all subject to a common employment policy). Indeed, "[e]ven a single [common] question" will do. *Wal-Mart*, 564 U.S. at 359.

Defendants claim that if all else fails, commonality cannot be found because agencies legally are required to manage their own affairs. *See* Opp. at 10 (citing 5 U.S.C. §§ 3101, 301). But this objection is contradicted by the facts of this case and the many statements the government has made about the power of the unitary executive under this Administration. *See, e.g.*, Brief for Appellants at 2, 16-17, *Harris v. Bessent*, Nos. 25-5037, 25-5055, 25-5057 (D.C. Cir. Mar. 27, 2025) (arguing that "[t]he Constitution vests the entirety of the 'executive Power' in the President," and "those wielding the President's executive authority must remain accountable to the President"); *see also* Jared P. Cole

& Daniel T. Shedd, Cong. Rsch. Serv., R48523, Organizing Executive Branch Agencies: Structure and Delegations of Authority 2 (2025) (President "exercises control over the executive branch agencies through the appointment and oversight of the officers that lead them"). Here, the anti-DEIA EOs and OPM's implementing directives overrode and guided agency discretion by dictating, from the top, exactly how every agency was to identify, classify, and separate employees associated with DEIA. OPM, on the President's orders, directed agencies to place all DEIA employees on immediate administrative leave, compile and submit lists of those employees to OPM, define competitive areas "solely in terms of the DEIA office where the employees worked," and begin issuing reduction-in-force notices immediately. *See* Dkt. 70-1 at 135-136, 140; *cf. McReynolds*, 672 F.3d at 489-490 (commonality established through corporate level policies that guided discretion of management at over 600 branch offices). The agencies were not operating independently; they were executing instructions from a centralized authority.

Defendants' cited caselaw is unhelpful. In *White v. University of Washington*, No. 2:22-CV-01798-TL, 2024 WL 1241063, at *12-13 (W.D. Wash. Mar. 22, 2024), the court did not address Rule 23 at all, but instead considered a different standard under an Equal Protection claim and held that the plaintiff was not similarly situated to employees at a separate hospital because that hospital was "a municipal corporation separate from UW Medicine and governed by a separate CEO and Board." *Id.* at *13. Likewise, in *Brown v. Marsh*, the court addressed individual exhaustion requirements in the federal employment context. 777 F.2d 8, 14 (D.C. Cir. 1985). Neither case speaks to whether commonality exists when uniform presidential directives and OPM implementing guidance strip agencies of independent judgment and dictate identical adverse actions against an identifiable class of employees across the entire executive branch. Plaintiffs meet the commonality standard.

### 3.    Typicality Is Satisfied.

Plaintiffs may establish typicality by showing that the "claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019). Plaintiffs have done so here. Each named Plaintiff worked for the federal government during the relevant time period and was terminated due to RIFs related to the anti-DEIA EOs. *See* Dkt. 70-2 (Carrillo Decl.) ¶ 4; Dkt. 70-3 (Fell Decl.) ¶ 4; Dkt. 70-4 (Gilliard Decl.) ¶ 4; Dkt. 70-5 (Jensen Decl.) ¶ 4; Dkt. 70-6 (Laboy Decl.) ¶ 4; Dkt. 70-7 (Oliver Decl.) ¶ 4; Dkt. 70-8 (Smith Decl.) ¶ 4; Dkt. 70-9 (Stainnak Decl.) ¶ 4.

Defendants argue that the Plaintiffs are atypical purportedly due to differences in (1) the methods Plaintiffs used to administratively exhaust their claims and (2) roles they held at the time they were RIF'd. *See* Opp. at 10-11. Neither is true. Exhaustion is a procedural prerequisite, not a substantive element of Plaintiffs' claims, which are identical regardless of Plaintiffs' paths to federal court. And the fact that Plaintiffs Stainnak and Laboy were involuntarily returned to defunct DEIA positions solely to be separated does not distinguish their claims from those of Plaintiffs who were still in DEIA roles when RIF'd. On the contrary, it demonstrates that the policy operated the same way regardless of whether a class member was in a DEIA role when RIF'd or was dragged back into one—they were separated because of their association with DEIA. Moreover, as described above with respect to commonality, Plaintiffs do not need to have the identical jobs or job histories to be typical of the Class. *See N.S. v. Hughes*, 335 F.R.D. 337, 354 (D.D.C. 2020), *modified on clarification sub nom. N.S. v. Dixon*, No. 1:20-CV-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) (factual variations between claims are permitted so long as class representative's claim is based on same unlawful conduct.); *Pappas*, 2024 WL 1111298, at *9 (finding typicality because "[a]lthough the precise details of each class member's disability and retirement hearing may differ slightly, . . . each

class member possess[es] the same interest and suffer[s] the same injury—lack of a reassignment accommodation—as all other class members"); *Little*, 249 F. Supp. 3d at 420 (rejecting the defendant's alleged "person-specific legitimate non-discriminatory defenses for its decisions not to hire" in the context of the application of a uniform policy because "limited factual distinctions between class members does not destroy typicality"); *see also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 62-63, 68-70 (S.D.N.Y. 2018) (four named plaintiffs employed in subsets of defendant's revenue-generating divisions and within particular years of the class period nonetheless found typical of class spanning all three divisions, scores of business units, and the full class period); *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d at 1181 (five named plaintiffs employed at only four of seven defendant companies found typical of and appointed to represent certified class spanning thousands of job titles, because "all class members, regardless of their individual employers, allege the same injuries arising from common conduct: suppression of compensation due to Defendants' anti-solicitation agreements").

Defendants cite *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982), for the proposition that typicality is not met where the plaintiffs' claims are so varied that no one representative can claim to represent the class. *See* Opp. at 10. But *Falcon* does not support their position. There, the sole named plaintiff was denied a promotion but attempted to represent a class of job applicants who shared his national origin on the grounds that they all suffered harm by the company. *See Falcon*, 457 U.S. at 149. The Supreme Court found that the plaintiff had not bridged the gap between his individual *promotion* claim and the class *hiring* claims because he provided no evidence that a common discriminatory policy connected the practices affecting incumbent employees and those who had not been hired. *Id.* at 157-59. Importantly, the Court noted that "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify" a broader class. *Falcon*,

-10-

457 U.S. at 159 n.15. Regardless, here, Plaintiffs are all former employees who lost their jobs due to the same anti-DEIA policies. Typicality is satisfied.

### 4. Adequacy Is Satisfied.

Defendants fail to identify any disqualifying conflict rendering the Plaintiffs inadequate, devoting a single paragraph incorporating their same typicality arguments. Opp. at 11-12. Defendants' argument is meritless. *See Afghan & Iraqi Allies Under Serious Threat*, 334 F.R.D. at 462 ("Speculative or hypothetical conflicts will not defeat the adequacy requirement.").

### C. Class Certification Is Appropriate Under Rule 23(b).

Defendants' Rule 23(b) arguments mischaracterize both the relief Plaintiffs seek and the governing law.

### 1. The Proposed Class and Subclasses Satisfy Rule 23(b)(2).

Rule 23(b)(2) is satisfied where, like here, the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2)'s "act" "requirement focuses on the defendants' policy or conduct towards the class, not the specifics of the resulting harm to class members or even whether all have been injured in the same way. 2 William B. Rubenstein, *Newberg on Class Action* § 4:28 (6th ed. 2025). The D.C. Circuit has emphasized, "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017).

Here, Defendants appear to oppose a certification request that Plaintiffs never make, arguing that claims for backpay or compensatory damages cannot be certified under Rule 23(b)(2). *See* Opp. at 12. Plaintiffs agree, and thus have properly sought certification of such relief under Rule 23(b)(3). Mot. at 29-30.  Instead, Plaintiffs seek Rule 23(b)(2) certification of precisely the type of declaratory

and injunctive relief that Rule 23(b)(2) contemplates: a declaration that the anti-DEIA EOs and their implementation are unlawful; an injunction prohibiting Defendants from enforcing those directives; and classwide restoration of seniority, reinstatement, and expungement. Mot. at 29-30.[4]

Defendants do not offer any argument opposing the requested declaration and injunction, merely asserting that restoration of seniority, reinstatement, and expungement "are not truly indivisible" and require individual assessments. Opp. at 13. But that is not so. As here, in *Chicago Teachers Union, Local 1 v. Bd. of Edu. of the City of Chicago,* 307 F.R.D. 475, 484 (N.D. Ill. 2015), the defendant board of education argued that a reinstatement order could not provide relief under Rule 23(b)(2) because it would inevitably require individualized determinations—such as whether particular class members had mitigated their damages by obtaining other employment—thus setting in motion an impermissibly individualized remedial process. The court rejected this "indivisibility" argument, holding that the defendant's objection "boils down to a single complaint: Crafting a reinstatement order would be difficult." *Id.* at 485. But as the court explained, "just because an order is complex or involves multiple steps does not mean it fails to provide final relief." *Id.* Indeed, "hiring orders issued on a classwide basis almost always involve multiple steps and the fulfillment of various conditions." *Id.* Critically, the court emphasized that a reinstatement order would be "a single order that applied to all class members," preceded by "a class proceeding that determined the question of [the defendant's] liability as to all class members at once"—which is the kind of indivisible, classwide relief that Rule 23(b)(2) is designed to accommodate. *Id.* The same logic applies here.

---

[4] If Defendants intended to suggest that Plaintiffs cannot certify claims under both Rule 23(b)(2) and (b)(3), that is wrong: "There is no question that certification of hybrid classes is permitted under Rule 23." *DL v. District of Columbia,* 302 F.R.D. 1, 22 n.2 (D.D.C. 2013).

**2.      Certification Under Rule 23(b)(3) Is Appropriate for Plaintiffs' Title VII and CSRA Claims for Damages.**

Plaintiffs properly seek Rule 23(b)(3) certification of damages claims for violations of the CSRA and Title VII.

**a.      Predominance Is Satisfied.**

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant" class litigation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Common questions predominate where, as here, "generalized evidence . . . proves or disproves an element on a simultaneous, class-wide basis." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 485 (D.D.C. 2019). And "[w]here common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Coleman*, 306 F.R.D. at 85.

Defendants' opposition fails because it conflates liability questions with remedial questions and ignores the well-established framework for trying class employment discrimination cases. Here, liability turns entirely on common questions susceptible to common proof. For the CSRA claims, the predominating questions are (1) whether Defendants' separation of Plaintiffs and the Class from federal service violated RIF procedures and (2) whether Defendants discriminated against Plaintiffs and the Class by terminating them based on unlawful considerations, such as race, gender, or presumed political beliefs. These questions can be answered by examining the common policy documents, OPM directives, and the Administration's public statements.

For the Title VII advocacy claims, the key question is whether Defendants targeted workers for their perceived association with or advocacy on behalf of protected racial or gender groups— again, a question answered by common evidence. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (explaining that "the key questions [in Title VII advocacy claims] are whether Plaintiffs were discriminated against, and whether the reason for the discrimination was their advocacy for

protected employees"). For the disparate impact claims, the central inquiry is whether the anti-DEIA EOs had a statistically significant adverse impact on women and people of color—quintessentially common questions answered by classwide statistical evidence. *See Davis v. District of Columbia*, 925 F.3d 1249, 1250-51 (D.C. Cir. 2019) ("When an employer cuts back on its workforce by 'targeting' demographically disproportionate departments for layoffs, . . . [s]uch a practice . . . is the kind of practice the disparate impact theory of discrimination exists to scrutinize."). For the disparate treatment claims, the key question is whether Defendants' "standard operating procedure" was discrimination—a question answered with common statistical evidence, policy documents, and statements of decisionmakers. *Hill v. City of New York*, No. 13CV6147PKCJO, 2019 WL 1900503, at *9 (E.D.N.Y. Apr. 29, 2019).

Defendants argue that the Court will need to conduct "employee-by-employee adjudication" of issues such as class membership, causation, exhaustion, and remedy. Defs' Opp. at 14. But that is not so. Class membership is ascertainable through objective records that Defendants have—indeed, OPM directed every agency to compile and submit records of who it subjected to a RIF pursuant to the anti-DEIA EOs and implementing guidance. *See* Mot. at 8-10 (citing OPM's January 21 and January 24, 2025 directives requiring agencies to produce lists of DEIA employees and written reduction-in-force plans). Subclass membership is likewise determinable from standard personnel data. *See* Dkt. 70-1, Ex. 21 (Human Res. Mgmt. & Servs. Retention Register OIDO CRCL & CISOMB Supplemental Doc. Production 073-775, produced in *Fell v. Dep't of Homeland Sec.*, DC-0351-25-2879-I-1 (Merit Sys. Prot. Bd., Wash. Reg. Off.)) (listing race and gender in the RIF records produced in Plaintiff Fell's administrative proceedings). The question of "causation" in class employment discrimination cases is class-wide: for disparate impact cases, it depends on statistical evidence, *see Jones v. Chopra*, No. CV 18-2132 (BAH), 2023 WL 6037295, at *6 (D.D.C. Sept. 15, 2023), and for disparate treatment cases, it depends on common evidence regarding the intent of the

Administration in enacting and implementing the anti-DEIA EOs (intent which may also be inferred from knowledge of statistical disparities), the common documents regarding these policies, and the statements of key decision-makers, *see e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (disparate treatment shown by common statistical evidence and anecdotal evidence that brings "the cold numbers  convincingly to life"). As for exhaustion paths and remedies, the existence of some individualized issues—particularly at the remedial stage—does not defeat predominance. *See Harris*, 77 F. 4th at 761 ("Even where damages for a putative class action may require individualized calculations, courts have routinely held that those individual considerations do not necessarily preclude certification of a class . . . ."). Courts uniformly hold that individualized damages questions may be deferred to a remedial phase without defeating predominance. *See Moore v. Napolitano*, 926 F. Supp. 2d 8, 33-34 (D.D.C. 2013); *Jones*, 2023 WL 6037295, at *6.

Defendants' one-sentence contention (unsupported by any case law) that the existence of multiple claims with different theories of liability undermines predominance, Opp. at 14, is wrong. It is exceedingly common in employment class actions for courts to certify a class that asserts multiple legal theories, such as both disparate impact and disparate treatment, or claims under different laws. *See, e.g.*, *Chen-Oster*, 325 F.R.D. at 81-83 (disparate treatment and disparate impact theories, under both Title VII and the New York City Human Rights Law); *Parra*, 291 F.R.D. at 391-392 (disparate treatment and disparate impact theories under Title VII and intentional race discrimination under 42 U.S.C. § 1981), *amended in part sub nom. Estrada v. Bashas' Inc.*, No. CV–02–00591–PHX–RCB, 2014 WL 1319189 (D. Ariz. Apr. 1, 2014); *Ellis*, 285 F.R.D. at 538 (disparate treatment and disparate impact theories under Title VII); *Jones*, 2023 WL 6037295, at *6 (disparate treatment and disparate impact theories under Title VII). Given the overlap in evidence that Plaintiffs will use to prove their advocacy, disparate impact, and disparate treatment claims, predominance is satisfied.

Defendants' attempt to rebut predominance based on *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), and *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), is entirely misplaced. Described by the reviewing appellate court as involving "what may be the largest class action ever attempted in federal court," *Castano* involved millions of mass tort claims related to tobacco addiction arising under the separate laws of all 50 states and American jurisdictions. 84 F.3d at 737; *see also Taylor v. D.C. Water & Sewer Auth.*, 205 F.R.D. 43, 52 n.10 (D.D.C. 2002) (distinguishing *Castano* from a class seeking certification under Rule 23(b)(3) because *Castano* "was a mass torts action involving millions of class members and wide variations in state law"). Unlike here, the plaintiffs' individualized personal injuries, exposures, and causation in *Castano* were divergent and subject to different state-law standards, and there was no common policy or practice causing uniform harm. *See* 84 F.3d at 737-38. *McLaughlin*, a civil RICO case, is likewise distinguishable: the court found predominance not satisfied for numerous reasons not present here, including because liability *for fraud* requires individualized proof of reliance on the alleged misrepresentation and because "individual smokers would have incurred different losses depending on what they would have opted to do, but for defendants' misrepresentation." 522 F.3d at 228. That is, both liability and damages depended on the individual class members' actions—not just the actions of the tobacco company. Here, by contrast, the case rises or falls based on the legality of a single, identifiable policy of the Defendants that caused common injury (*i.e.*, termination through RIF) and the key liability questions are susceptible to classwide proof.

### b.      Superiority Is Satisfied.

Defendants raise a number of arguments about superiority in their opposition to numerosity. But whether certification is a superior method for resolving claims is not a Rule 23(a) or (b)(2) issue. More fundamentally, regardless of where Defendants state their position, it is wrong. In the absence of certification, a grave injustice will occur. By definition, Class members have lost their jobs and

undoubtedly many lack the financial means to fund individual litigation. *See, e.g.*, Dkt. 70-2 (Carrillo Decl.) ¶¶ 4, 12; Dkt. 70-3 (Fell Decl.) ¶¶ 4, 12; Dkt. 70-4 (Gilliard Decl.) ¶¶ 4, 12; Dkt. 70-5 (Jensen Decl.) ¶¶ 4, 13; Dkt. 70-6 (Laboy Decl.) ¶¶ 4, 11; Dkt. 70-7 (Oliver Decl.) ¶¶ 4, 13; Dkt. 70-8 (Smith Decl.) ¶¶ 4, 12; Dkt. 70-9 (Stainnak Decl.) ¶¶ 4, 12. They have reasonable fears of being doxed online and of retaliation from an employer that has stigmatized them as committing fraud on the government. *See* Dkt. 70-1, Ex. 1 (Executive Order 14151 describing "Government DEI Programs" as "radical and wasteful" and directing elimination of positions doing this work); *id.*, Ex. 2 (Executive Order 14173 describing "DEI and DEIA policies" as "deny[ing], discredit[ing], and undermin[ing] the traditional American values of hard work, excellence, and individual achievement in favor of an unlawful, corrosive, and pernicious identity-based spoils system"); *see also* Mot. at 15 (describing the American Accountability Foundation targeting Class members through a public "DEI Watchlist," which displayed their photographs, work summaries, and social media accounts to encourage their termination); Dkt. 70-1, Ex. 25 (the American Accountability Foundation described its website, "The DEI Watchlist is focused on exposing the unelected career staff driving radical Diversity, Equity, and Inclusion (DEI) initiatives within the federal government."). They also are vulnerable to not being rehired now, either by the government or a new employer, especially if they become litigants. *See* Dkt. 70-1, Ex. 25. Finally, joinder is not realistic because they are geographically dispersed throughout the country. Mot. at 19-20. Significantly, Defendants do not actually dispute any of these dispositive facts. *See Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 306 (D.D.C. 2007) (rejecting defendants' geographic dispersion challenge when they "decry" plaintiffs' assertion that the putative class members are dispersed geographically "as conclusory but— significantly—do not actually dispute that the putative class members are geographically dispersed").

**D.**     **Certification Under Rule 23(c)(4) Is Appropriate in the Alternative.**

Defendants' argument that certification under Rule 23(c)(4) would not "materially advance the litigation" ignores the D.C. Circuit's clear guidance that "an issue class may be appropriate where common questions predominate as to (i) the determination of liability, giving rise to a liability-only issue class; (ii) proof of a key element of a cause of action . . . ; or (iii) another aspect of the controversy that, if decided, would materially advance the fair resolution of the litigation." *Harris*, 77 F.4th at 760-61. That is, under D.C. Circuit law—and not the minority position taken by the Fifth Circuit in a mass tort case on which Defendants curiously rely, *see* Opp. at 15 (citing *Castano*, 84 F.3d at 745 n.21, 749-52)—the D.C. Circuit endorses the use of issue classes where the certified issue "encompass[es] a reasonably and workably segregable aspect of the litigation." *Harris*, 77 F.4th at 760.

Certifying common issues here—including the legality of the anti-DEIA EOs and implementing directives, the discriminatory intent behind the anti-DEIA policy, and whether the policy had a disparate impact on women and people of color—would materially advance the litigation by resolving the central liability questions for the entire class. These are not "abstract" questions divorced from the real issues in the case. Opp. at 15. They are the dispositive liability questions upon which every Class member's claim depends. Disposition of these issues would either resolve the case—as would most obviously occur with disposition of Plaintiffs' First Amendment claims—or would dramatically narrow the remaining questions for individual proceedings. *See McReynolds*, 672 F.3d at 483 (holding Rule 23(c)(4) certification appropriate to decide common issue of "whether the defendant has engaged and is engaging in practices that have a disparate impact . . . on the members of the class"). Plaintiffs satisfy this element.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify the case as a class action under Rule 23; appoint the Plaintiffs as Class Representatives; appoint Plaintiffs Kamir Carrillo-Figueroa, Stephanie Fell, Stephanie Gilliard, Lauren Jensen, Kimiko Oliver, L.L. Smith, and Mahri Stainnak as Gender Subclass Representatives; appoint Plaintiffs Kamir Carrillo-Figueroa, Stephanie Gilliard, David José Laboy, Kimiko Oliver, and L.L. Smith as Race/Ethnicity Subclass Representatives; and appoint the undersigned counsel as Class counsel pursuant to Rule 23(g).

Dated:  April 27, 2026

_Kelly M. Dermody_

Kelly M. Dermody (D.C. Bar No. 90032320)
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street 29th Floor
San Francisco CA 94111-3339
Tel.: (415) 956-1000
Fax: (415) 956-1008
kdermody@lchb.com

Jessica A. Moldovan (NY Bar No. 5615943)
Jahi J. Liburd (NY Bar No. 6015812)
Lieff Cabraser Heimann & Bernstein LLP
250 Hudson Street 8th Floor
New York, NY 10013
Tel.: (212) 355-9500
jmoldovan@lchb.com
jliburd@lchb.com

Mary E. Kuntz (D.C. Bar No. 1000482)
Anna Kathryn B. Barry (D.C. Bar No. 1719493)
Sacred Huff (D.C. Bar No. 1671434)
Hector Ruiz (D.C. Bar No.90035280)
Kalijarvi, Chuzi, Newman & Fitch P.C.
818 Connecticut Ave., NW, Suite 1000
Washington, D.C. 20006
Tel.: (202) 331-9260
Fax: (866) 452-5789
mkuntz@kcnlaw.com
akbarry@kcnlaw.com

Scott Michelman (D.C. Bar No. 1006945)
Aditi Shah (D.C. Bar No. 90033136)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel.: (202) 457-0800
smichelman@acludc.org
ashah@acludc.org

Michael C. Martinez (D.C. Bar No. 1686872)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
Fax: (202) 796-4426
mmartinez@democracyforward.org

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify that this motion will also be served on counsel for Defendants via e-mail, in accordance with Federal Rule of Civil Procedure 5(b).

Dated:  April 27, 2026

Kelly M. Dermody

Kelly M. Dermody (D.C. Bar No. 90032320)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street 8th Floor
New York, NY 10013
Tel.: (212) 355-9500
kdermody@lchb.com