# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEPHANIE FELL, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP,<br>*in his official capacity as*<br>*President of the United States,*<br>*et al.*<br><br>    Defendants. | Case No. 1:25-cv-04206 |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................................1

ARGUMENT.......................................................................................................................................3

I.      PLAINTIFFS LACK STANDING TO SUE NON-EMPLOYER AGENCIES. ...................3

II.     PLAINTIFFS FAILED TO EXHAUST ALL THEIR CLAIMS. ............................................4

III.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE FIRST AMENDMENT
        RETALIATION (CLAIM 1). ..........................................................................................6

IV.     PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE TITLE VII VIOLATIONS. ......................7

        A.      Title VII Does Not Recognize Plaintiffs' "Advocacy" Theory (Claim 2).....................7

        B.      Plaintiffs Fail to Plausibly Allege Intentional Discrimination (Claims 3 and 4). ...........9

        C.      Plaintiffs Fail to Plausibly Allege Disparate Impact (Claims 5 and 6). ........................10

V.      PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANY VIOLATION OF THE
        CSRA (CLAIM 7)..........................................................................................................11

CONCLUSION....................................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................................13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................................13

*Branti v. Finkel,*
445 U.S. 507 (1980) .................................................................................................7

*Burford v. Yellen,*
246 F. Supp. 3d 161 (D.D.C. 2017) .......................................................................10

*Citizens for Responsibility & Ethics in Washington v. DOJ,*
772 F. Supp. 3d 1 (D.D.C. 2025)............................................................................3

*Convertino v. DOJ,*
393 F. Supp. 2d 42 (D.D.C. 2005).................................................................... 4, 5

*Czekalski v. Peters,*
475 F.3d 360 (D.C. Cir. 2007)................................................................................8

*Ford v. Mabus,*
629 F.3d 198 (D.C. Cir. 2010).................................................................................8

*Frank v. Gaos,*
586 U.S. 485 (2019) .................................................................................................3

*George v. Leavitt,*
407 F.3d 405 (D.C. Cir. 2005)................................................................................8

*Greater New Orleans Fair Hous. Ctr. v. HUD,*
639 F.3d 1078 (D.C. Cir. 2011).............................................................................10

*Harris v. Mayorkas,*
No. 21-CV-1083 (GMH), 2022 WL 3452316 (D.D.C. Aug. 18, 2022) ...............................................9

*Heffernan v. City of Paterson,*
578 U.S. 266 (2016) .................................................................................................7

*Ibrahim v. Rubio,*
Case No. 1:24-cv-02915 (TNM), 2025 WL 3718637 (D.D.C. Dec. 23, 2025) ...................................8

ii

*J.D. v. Azar,*
 925 F.3d 1291 (D.C. Cir. 2019)..................................................................................................4

*James v. Von Zemenszky,*
 284 F.3d 1310 (Fed. Cir. 2002) ...............................................................................................11

*Jewell v. Jagadesan,*
 No. 25-cv-1322 (DLF), 2026 WL 686105 (D.D.C. Mar. 11, 2026).......................................6

*Mallory v. Norfolk S. Ry. Co.,*
 600 U.S. 122 (2023) ....................................................................................................................8

*McCabe v. Barr,*
 490 F. Supp. 3d 198 (D.D.C. 2020) ..........................................................................................7

*Murthy v. Missouri,*
 603 U.S. 43 (2024) ......................................................................................................................3

*Payton v. County of Kane,*
 308 F.3d 673 (7th Cir. 2002) ......................................................................................................3

*Russell v. D.C.,*
 804 F. Supp. 3d 192 (D.D.C. 2025) ..........................................................................................8

*Rutan v. Republican Party of Ill.,*
 497 U.S. 62 (1990) ......................................................................................................................7

*Singletary v. District of Columbia,*
 351 F.3d 519 (D.C. Cir. 2003)....................................................................................................8

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home,*
 918 F.2d 963 (D.C. Cir. 1990)................................................................................................ 4, 5

*TransUnion LLC v. Ramirez,*
 594 U.S. 413 (2021) ....................................................................................................................2

*Turner v. U.S. Agency for Glob. Media,*
 502 F. Supp. 3d 333 (D.D.C. 2020) ..........................................................................................4

*United States v. ICC,*
 221 F. Supp. 584 (D.D.C. 1963)................................................................................................3

*United States v. Torres,*
 115 F.3d 1033 (D.C. Cir. 1997)..................................................................................................8

*Weaver v. U.S. Info. Agency,*
 87 F.3d 1429 (D.C. Cir. 1996)....................................................................................................4

**Statutes**

5 U.S.C. § 3502.................................................................................................................................11

42 U.S.C. § 2000e-2 .........................................................................................................................8

42 U.S.C. § 2000e-3 .........................................................................................................................9

42 U.S.C. § 2000e-16 .......................................................................................................................8

**Rules**

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ................................................................1

**Regulations**

5 C.F.R. pt. 351 ...............................................................................................................................11

5 C.F.R. § 351.301...........................................................................................................................11

5 C.F.R. § 351.402...........................................................................................................................11

5 C.F.R. § 351.603 ..................................................................................................................... 12, 13

5 C.F.R. § 351.701 ..................................................................................................................... 12, 13

5 C.F.R. § 351.702...........................................................................................................................12

5 C.F.R. § 351.703...........................................................................................................................12

5 C.F.R. § 351.704...........................................................................................................................12

5 C.F.R. § 351.705...........................................................................................................................12

29 C.F.R. § 1614.407 .........................................................................................................................5

**INTRODUCTION**

Plaintiffs' Amended Complaint represents a study in overbreadth and imprecision that should be dismissed for both lack of jurisdiction and failure to state a claim.  Plaintiffs are eight former federal employees who allege they were unlawfully removed from government service as part of agency reductions-in-force ("RIFs") carried out in 2025, and from there seek to bootstrap agency-specific removal challenges into a putative class action against twenty-seven agencies and sub-agencies, including twenty that none of them worked for at any relevant time. As Defendants' opening brief showed, Plaintiffs' math does not add up to jurisdiction over claims against those twenty agencies, which cannot be alleged to have injured any of the Plaintiffs. And even as to the seven named Defendant agencies Plaintiffs did work for at the time of their removals, Plaintiffs have largely failed to satisfy jurisdictional exhaustion requirements, providing an independent basis for dismissal of most of their claims against those Defendants. Finally, Plaintiffs fail to state any claim on which relief can be granted.  Plaintiffs' opposition brief fails to counter any of those points and thereby offers no pathway for their Amended Complaint to make it past Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

First, Plaintiffs lack standing to sue the twenty agency and sub-agency Defendants (and corresponding agency heads) that never employed them and thus took no personnel action against them. Plaintiffs try to overcome that problem in two ways: (1) by asking the Court to treat multiple Defendants as a single, undifferentiated entity and (2) by relying on unnamed putative class members to manufacture standing against agency and sub-agency Defendants that made their own personnel decisions. Neither strategy finds any precedential support, and neither salvages Plaintiffs' claims against the twenty agency and sub-agency Defendants that no Plaintiff worked for.

Second, Plaintiffs fail to exhaust most of the claims that they now attempt to litigate here. In response to Defendants' showing on this point, Plaintiffs' Opposition relies on a patchwork of MSPB appeals, subsequent MSPB discovery responses, U.S. Office of Special Counsel ("OSC") submissions, and declarations to try to satisfy their exhaustion requirements. But Plaintiffs still must show that each theory of liability was fairly presented through the proper administrative process and reasonably encompassed by their respective administrative appeals. They have not done so. As explained below, Plaintiffs Smith and Oliver failed to exhaust their First Amendment claims as to the National Institutes of Health ("NIH") and the Commodity Futures Trading Commission ("CFTC"), respectively; Plaintiffs largely failed to exhaust their standalone Title VII "advocacy" theory against any Defendant; Oliver failed to exhaust sex discrimination claims as to CFTC; and Carrillo-Figueroa failed to exhaust race discrimination claims as to the CFTC.

Third, Plaintiffs fail to plausibly allege viable claims under the First Amendment, Title VII, or the Civil Service Reform Act of 1978 ("CSRA"). Plaintiffs identify public statements by administration officials criticizing DEI initiatives or supporting government-wide restructuring efforts, but they do not sufficiently establish that Defendants perceived Plaintiffs themselves as holding protected political beliefs or engaging in protected political associations, or that Defendants acted against Plaintiffs because of those beliefs. Likewise, Plaintiffs' "advocacy" theory remains disconnected from Title VII's text and cannot substitute for plausible allegations that Plaintiffs themselves were discriminated against because of their own protected characteristics. And Plaintiffs' remaining CSRA theories continue to collapse into generalized policy disagreement with Executive Branch staffing decisions rather than plausible allegations that Defendants violated any specific statutory or regulatory RIF requirement.

The Amended Complaint should therefore be dismissed.

2

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING TO SUE NON-EMPLOYER AGENCIES.

Because Article III standing "is not dispensed in gross," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), a plaintiff must establish standing "for each claim that [she] press[es] against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 60-61 (2024); *see* Defs.' Mot. to Dismiss ("Mot.") at 7, ECF No. 76-1. As Defendants explained in their opening brief, Plaintiffs fail this test as to the vast majority of the twenty-seven agency and sub-agency Defendants named in the Amended Complaint. Mot. at 7-8. Plaintiffs make two primary arguments in response, neither of which helps them show standing against those Defendants.

First, Plaintiffs suggest that all twenty-seven Defendants should be collapsed into a single undifferentiated entity and that standing to sue some of them thereby provides standing to sue all of them. Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss, ("Opp.") at 7-12, ECF No. 81. That argument—which is the very definition of asserting standing "in gross"—is plainly wrong. As *Murthy* explains, "for *every* defendant, there must be at least one plaintiff with standing," *Murthy*, 603 U.S. at 61 (emphasis added). Plaintiffs invoke *United States v. ICC*, 221 F. Supp. 584 (D.D.C. 1963), and *Citizens for Responsibility & Ethics in Washington v. DOJ*, 772 F. Supp. 3d 1 (D.D.C. 2025) (Opp. at 8-9), but neither case addressed standing.[1] Indeed, the government is unaware of any authority adopting Plaintiffs' theory that, because "the United States" is a single entity, a plaintiff with standing to sue *one* federal agency has standing to sue *every* federal agency.

---

[1] If *Citizens for Responsibility & Ethics in Washington* has any relevance, it holds only that the Freedom of Information Act ("FOIA") practices of multiple "components" within a single agency may be treated as a single policy or practice. 772 F. Supp. 3d at 9. As the court explained, FOIA claims against "two entirely different agencies" would present a different issue. *Id.*

Second, Plaintiffs insist that they may establish standing to sue not just the seven agencies and sub-agencies that employed them, but all twenty-seven named agency and sub-agency Defendants, through alleged injuries suffered by unnamed class members. Opp. at 9-10 (citing *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002)). That insistence is wrong. To establish jurisdiction, the Supreme Court has explained, a "named plaintiff" must show standing. *Frank v. Gaos*, 586 U.S. 485, 492 (2019). And as the D.C. Circuit has emphasized, "an absent class member's individual standing will not suffice." *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019). Defendants cited both *Frank* and *J.D.* in their opening brief, yet Plaintiffs' response failed to even acknowledge either decision, much less substantively address them. Instead, Plaintiffs pin their argument on a 2002 Seventh Circuit decision, *Payton v. County of Kane. See* Opp. at 1, 7, 10. But they never explain why this Court should ignore black letter law articulated by the Supreme Court and the D.C. Circuit in favor of an older, out-of-circuit decision.  Just as importantly, they cite no Supreme Court or D.C. Circuit authority that would support the idea that named plaintiffs who cannot themselves establish standing to sue particular defendants may bootstrap their way to jurisdiction over those defendants through reliance on alleged injuries suffered by unnamed putative class members.

For these reasons, Plaintiffs lack standing to sue the twenty agency and sub-agency Defendants that did not employ them at the time of their removals. The Court should therefore dismiss Plaintiffs' claims against those Defendants on that basis and dismiss the remaining claims for the additional reasons explained below.

## II.    PLAINTIFFS FAILED TO EXHAUST ALL THEIR CLAIMS.

Plaintiffs' exhaustion arguments fail plaintiff by plaintiff and claim by claim. Contrary to Plaintiffs' argument, because Plaintiffs challenge appealable personnel actions and allege both discrimination and non-discrimination claims arising from those actions, they are subject to the CSRA's jurisdictional exhaustion requirements, rather than the non-jurisdictional administrative

exhaustion requirement that would apply to purely Title VII claims. *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 366 (D.D.C. 2020) (quoting *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996)); *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990); *Convertino v. DOJ*, 393 F. Supp. 2d 42, 47-48 (D.D.C. 2005). Accordingly, if Plaintiffs failed to administratively exhaust the claims asserted here, the Court lacks jurisdiction over those unexhausted claims. And regardless of whether jurisdictional or non-jurisdictional exhaustion applies, Plaintiffs' responses confirm that they failed to exhaust numerous claims.

Plaintiffs Smith and Oliver illustrate this deficiency. For starters, Smith did not exhaust any of her Title VII claims against NIH because she did not file her formal EEO complaint until December 23, 2025, and did not wait either for 180 days or for a final agency decision before filing suit. Mot. at 9; Ex. B, ECF No. 76-3; *see* 29 C.F.R. § 1614.407. Plaintiffs do not dispute that, at the time they commenced this litigation, neither Smith nor Oliver had raised First Amendment claims in a mixed case administrative proceeding. Oliver contends that she raised a First Amendment claim against the CFTC in her MSPB proceeding after this litigation had commenced. Opp. at 41 (alleging she raised her First Amendment claim on December 10, 2025). But that confirms, at most, that the claim was not before the MSPB when this case began. And in any event, raising a claim before the MSPB does not constitute exhaustion; Oliver was required to wait for a final MSPB decision or satisfy the applicable statutory waiting period before filing suit. She did neither. And although Smith alleges in conclusory terms that she raised a First Amendment claim before the Office of Special Counsel, Am. Compl. ¶ 199, ECF No. 8, she fails to allege that she obtained a final administrative disposition or plead any facts that would show she fully exhausted her claims before she sought judicial review.

Nor do Plaintiffs seriously dispute that they failed to raise several of their Title VII theories during the administrative process. Although Plaintiffs now characterize their "advocacy" theory as merely a subset of their race and sex discrimination theories, the Amended Complaint pleads it as a

distinct theory. Am. Compl. ¶¶ 260-63. Plaintiffs fail to show that this standalone Title VII advocacy theory was exhausted through any completed administrative process. Although some Plaintiffs referenced advocacy-related facts or arguments in administrative filings, Plaintiffs identify no final MSPB, EEO, or other administrative decision addressing the distinct Title VII advocacy theory pleaded in the Amended Complaint. Those scattered references therefore do not establish exhaustion. Plaintiffs likewise fail to dispute that Oliver did not allege that CFTC discriminated against her on the basis of sex, or that Carrillo-Figueroa did not allege that CFTC discriminated against her on the basis of race. Yet they contend that these Plaintiffs asserted those theories "through" theories that they advocated on behalf of others who were discriminated against. Not so. Oliver's mere mention of "the Office of Minority and Women Inclusion" did not somehow put the agency on notice that she alleged discrimination based on her advocacy for women. Similarly, Carrillo-Figueroa's administrative filing does not demonstrate that she exhausted a race-discrimination-through-advocacy theory. At most, it referenced perceived or presumed partisan political affiliation and sex discrimination, but Plaintiffs identify no MSPB decision addressing any race-discrimination or race-discrimination-through-advocacy theory as to Carrillo-Figueroa.

### III.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE FIRST AMENDMENT RETALIATION (CLAIM 1).

Plaintiffs concede, as they must, that the First Amendment does not protect their interest in carrying out their DEI-related federal job responsibilities. *Jewell v. Jagadesan*, No. 25-cv-1322 (DLF), 2026 WL 686105, at *4-5 (D.D.C. Mar. 11, 2026). They also fail to plausibly allege that Defendants targeted them for their own political beliefs or associations. At most, the public statements cited by Plaintiffs, Opp. at 12-16, evince disagreement with the policy rationales underlying DEI initiatives. They plainly do not establish that Defendants perceived Plaintiffs as personally adhering to those policy rationales—let alone that Plaintiffs' perceived beliefs were the reason they were removed from their respective agencies.

6

Plaintiffs principally rely on *Heffernan v. City of Paterson* to argue that perceived political affiliation alone can support a First Amendment retaliation claim. 578 U.S. 266, 268-69 (2016). But *Heffernan* involved individualized allegations that government officials mistakenly believed the plaintiff himself engaged in protected partisan political activity. *Id.*; *see, e.g., Branti v. Finkel*, 445 U.S. 507, 517-20 (1980) (holding that assistant public defenders could not be discharged based on political affiliation where they were terminated solely because they were Republicans and lacked Democratic Party sponsorship); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65-68, 75-79 (1990) (holding that the First Amendment prohibits employment decisions based on political affiliation where employees and applicants allegedly were denied promotions, transfers, recalls, and hiring opportunities because they lacked support from the Republican Party); *McCabe v. Barr*, 490 F. Supp. 3d 198, 201-05 (D.D.C. 2020) (alleging FBI official was targeted based on perceived political affiliation, voting decisions, and refusal to pledge personal loyalty).

Here, by contrast, Plaintiffs do not plausibly allege that Defendants perceived Plaintiffs as having any particular political affiliations or beliefs. Rather, Plaintiffs merely allege that Defendants targeted DEI-related work associated with certain offices, functions, and initiatives. *See* Opp. at 12-16; Am. Compl. ¶¶ 101-121. Nothing in the Amended Complaint suggests that Defendants cared about—or had any opinion about—Plaintiffs' personal political beliefs.

## IV.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE TITLE VII VIOLATIONS.

### A.    Title VII Does Not Recognize Plaintiffs' "Advocacy" Theory (Claim 2).

Plaintiffs contend that Title VII prohibits adverse action against employees who allegedly advocate for or are "perceived as advocating for protected racial and gender groups," even if the alleged adverse action was not taken because of the employee's own protected characteristic. Opp. at 5-13. But as Defendants explained, Title VII prohibits discrimination against an employee because of that employee's own race, color, religion, sex, or national origin. Mot. 12.

7

Plaintiffs concede that this is true of claims of private employer discrimination under 42 U.S.C. § 2000e-2 but suggest that it is not true of claims of federal employment discrimination under § 2000e-16(a). But the D.C. Circuit has repeatedly held that the § 2000e-2 and § 2000e-16 "contain identical prohibitions." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007); *accord George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005); *Singletary v. District of Columbia*, 351 F.3d 519, 523-24 (D.C. Cir. 2003); *Ibrahim v. Rubio*, Case No. 1:24-cv-02915 (TNM), 2025 WL 3718637, at *2 (D.D.C. Dec. 23, 2025). Plaintiffs reluctantly acknowledge this but claim that this longstanding authority is in tension with the D.C. Circuit's interpretation of the Age Discrimination in Employment Act in *Ford v. Mabus*, 629 F.3d 198 (D.C. Cir. 2010). But it is the D.C. Circuit's prerogative to decide whether its earlier cases have been overruled, "even if the lower court thinks the precedent is in tension" with later decisions. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *see United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("district judges, like panels of this court, are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it"); *see also Russell v. D.C.*, 804 F. Supp. 3d 192, 200-01 (D.D.C. 2025) (trial court could not overrule panel decision merely "in tension" with Supreme Court decisions). In any event, *Ford* addressed the distinct text of the federal sector Age Discrimination in Employment Act of 1967, holding only that age need not be the but-for cause of a personnel action to establish liability under that statute; it did not address Title VII's federal sector provision, much less suggest that an employee may establish discrimination based on the protected characteristics of *someone else. See id.*

Nor does Plaintiffs' reliance on § 2000e-2(m) change the analysis. That provision does not set forth a separate basis for finding a violation of the Civil Rights Act; it simply establishes the *causation standard* that a plaintiff must meet to establish a violation of § 2000e-2(a) or § 2000e-16. But regardless of the causation standard, the plaintiff must still allege discrimination on the basis of the plaintiff's own protected characteristic.

Plaintiffs also misapprehend Defendants' argument about the surplusage canon. As Defendants explained, another provision of the Civil Rights Act, 42 U.S.C. § 2000e-3(a), prohibits discrimination against an employee because that employee "has opposed any practice made an unlawful employment practice by Title VII." Mot. 13. Plaintiffs are, of course, correct that "not all forms of advocacy on behalf of protected characteristics" are protected by § 2000e-3(a). Opp. at 21. But the surplusage problem arises because all activity protected by § 2000e-3(a)—and then some— *would* be protected by Plaintiffs' advocacy theory. For that reason, if Plaintiffs' advocacy theory was correct, there would have been no need for § 2000e-3(a).

### B.  Plaintiffs Fail to Plausibly Allege Intentional Discrimination (Claims 3 and 4).

Plaintiffs fail to plausibly allege that they were removed because of their race or sex, and their opposition suggests nothing to the contrary. They argue that they allege a "pattern or practice" of intentional discrimination by "alleg[ing] that the Administration's RIF policies targeted a field of federal employment disproportionately staffed by women and people of color." Opp. at 26. But that is a claim of disparate impact, not disparate treatment. As Defendants explained, the Amended Complaint contains no plausible allegation of discriminatory intent. Mot. 14-15.

Plaintiffs try to make up that deficit by alleging that the President's public statements "[tie] 'DEI' to racial minorities and women." Opp. at 26-27 (citing Am. Compl. ¶¶ 6, 101-111); *see also id.* at 28 (citing Am. Compl. ¶¶ 6-12, 101-111, 144-48). As the statements themselves attest, that assertion is groundless. None of the alleged statements by the President or other Administration officials says anything whatsoever about the race or sex characteristics of government employees.

Unable to point to any statement evincing discriminatory intent, Plaintiffs fall back on their conclusory assertion that they were treated differently than similarly situated employees. But as Defendants pointed out in their motion, these allegations are too lacking in specifics to create a plausible inference of discriminatory intent. Mot. 15; *see also Harris v. Mayorkas*, No. 21-CV-1083

9

(GMH), 2022 WL 3452316, at *6, *8 (D.D.C. Aug. 18, 2022) (dismissing Title VII claims and collecting cases in which pleadings failed to plausibly plead a similarly situated comparator).

### C.  Plaintiffs Fail to Plausibly Allege Disparate Impact (Claims 5 and 6).

Plaintiffs' disparate impact allegations likewise remain deficient. They acknowledge that, at the motion to dismiss stage, they must allege a statistical disparity. Opp. at 30-31; *see also* Mot. 15-16; *Burford v. Yellen*, 246 F. Supp. 3d 161, 180 (D.D.C. 2017). Nor do they dispute that Fell's agency, the U.S. Department of Homeland Security, is the only agency for which Plaintiffs pleaded an alleged statistical disparity. *See* Opp. at 30-34. Thus, at the very least, the disparate impact claims asserted by every Plaintiff other than Fell should be dismissed.

Fell's sex-based disparate impact claim should be dismissed, too. As Defendants explained in their opening brief, the statistical disparity Fell alleges between women and men contains a mismatch between numerator and denominator. In her comparison, the numerators are the number of women and men who were separated pursuant to a RIF in "a civil rights office" within DHS. Am. Compl. ¶ 143. The proposed denominators are the number of women and men in the federal workforce (or, alternatively, DHS as a whole). *Id.* But the relevant denominator is the number of women and men in the office from which the numerators were derived. Plaintiffs claim that misunderstands their theory, which they say focuses on "the impact of the EOs across the government as a whole." Opp. at 32-34. But if that is so, then the numerators should be the number of women and men separated under EO-related RIFs government-wide. Plaintiffs cannot selectively pair an agency specific numerator with a government-wide denominator. *See Greater New Orleans Fair Hous. Ctr. v. HUD*, 639 F.3d 1078, 1086-87 (D.C. Cir. 2011).

## V.     PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANY VIOLATION OF THE CSRA (CLAIM 7).

As Defendants' opening brief showed, the Amended Complaint fails to identify a specific statutory or legal requirement that Defendants allegedly violated as a basis for Claim 7. The CSRA authorizes OPM to prescribe regulations governing RIF procedures, see 5 U.S.C. § 3502, and those procedures are set forth in Part 351. *See* 5 C.F.R. pt. 351; *see also James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002). Plaintiffs' opposition makes no showing to the contrary.

First, Plaintiffs argue that Defendants unlawfully "target[ed] people, not positions[,]" Opp. at 34-37, but they identify no Part 351 provision that was violated on that basis. To be sure, a reduction in force is directed at positions rather than particular employees. But Plaintiffs' allegations do not plausibly demonstrate that Defendants violated any specific requirement of Part 351. The fact that employees associated with DEIA offices were affected by the challenged RIFs does not itself establish that agencies failed to abolish positions or otherwise departed from the procedures prescribed by the governing RIF regulations. Plaintiffs cannot transform a policy disagreement about the Executive Branch's workforce decisions into a CSRA violation without identifying a specific statutory or regulatory requirement that was breached.

Second, Plaintiffs argue that Defendants defined competitive areas too narrowly, but 5 C.F.R. § 351.402 gives agencies substantial discretion in defining competitive areas. *Id.* at 36. Section 351.402 requires only that such areas be defined "solely in terms of the agency's organizational unit(s) and geographical location." 5 C.F.R. § 351.402(b). The regulation further provides that "[a] competitive area may consist of all or part of an agency." *Id.* Plaintiffs identify no provision requiring agencies to adopt the broadest possible competitive area or prohibiting agencies from defining competitive areas around particular organizational units. And Plaintiffs fail to plausibly allege that any agency-defined competitive area failed to satisfy § 351.402's actual textual requirements. *See* Opp. at 34-37.

Third, Plaintiffs argue that certain functions continued after the RIFs, but their allegations do not satisfy Part 351's transfer-of-function requirements. Plaintiffs point to allegations that certain agency functions continued, agencies subsequently posted vacancies, and some responsibilities were reassigned. *See* Am. Compl. ¶¶ 31, 33, 35, 37, 39, 41-79, 113-124; *see also* Opp. at 34-37. But those allegations do not plausibly establish that any Plaintiff was entitled to transfer-of-function rights under Part 351. Part 351's transfer-of-function provisions apply only where work moves from one competitive area to another and "continue[s] in an identical form in the gaining competitive area." 5 C.F.R. § 351.301(a)-(b). Plaintiffs fail to sufficiently allege facts demonstrating that any Plaintiff's position was actually transferred to another competitive area with substantially the same duties, personnel, and function. Rather, the allegations reflect broader organizational restructuring and reassignment of functions following agency reorganization decisions. *See* Opp. at 35-36.

Fourth, Plaintiffs argue that they were denied reassignment opportunities, but they do not plausibly allege the regulatory prerequisites for assignment, bump, or retreat rights. Allegations that a component of an agency continued to function in some form, was later reorganized, or subsequently posted hiring vacancies do not themselves establish entitlement to assignment, bump, or retreat rights under Part 351. Those rights are conditional and depend on factors including retention standing, tenure subgroup, qualifications, competitive area, grade limitations, and the existence of a qualifying position held by another employee at the time of the RIF. *See* 5 C.F.R. §§ 351.603, 351.701. For example, bumping rights apply only to positions held by employees in lower tenure groups or subgroups, while retreat rights apply only to positions held by employees with lower retention standing that are the same or essentially identical to positions previously held by the released employee on a permanent basis. 5 C.F.R. § 351.701(b)-(c). Plaintiffs do not plausibly allege those requirements were satisfied here.

12

While the Amended Complaint asserts in conclusory fashion that employees were denied reassignment opportunities, Am. Compl. ¶¶ 132-133, Plaintiffs do not plausibly allege that they were entitled to particular reassignments, possessed superior retention rights for any specific available position, or satisfied the regulatory prerequisites for bump or retreat rights under Part 351. *See* 5 C.F.R. §§ 351.701-.705. For example, Plaintiffs do not plausibly allege that they were qualified for any specific position under § 351.702, that a qualifying position existed within the same competitive area and permissible grade range, that the position was held by an employee with lower retention standing or in a lower tenure subgroup, or, for retreat rights, that the position was the same or essentially identical to one previously held by the released employee on a permanent basis. Those regulations govern assignment rights when an employee is selected for release from a competitive level during a RIF and require agencies to evaluate retention standing, tenure groups, competitive levels, qualifications, and available positions. *See* 5 C.F.R. §§ 351.603, 351.701. The regulations establish conditional bump, retreat, and reassignment rights governed by retention standing, qualifications, competitive levels, and available positions—not automatic reassignment entitlements whenever agencies conduct RIFs. Plaintiffs rely on speculation regarding unidentified vacancies, generalized assertions that some functions continued elsewhere, and conclusory allegations that reassignment opportunities supposedly existed. Opp. at 35-36. Such allegations are insufficient under *Twombly* and *Iqbal. See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## CONCLUSION

For the above reasons, and those stated in Defendants' Motion to Dismiss, Defendants respectfully request that the Court grant their motion to dismiss.

Dated:  June 1, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director

*Kian K. Azimpoor*
KIAN K. AZIMPOOR (D.C. Bar No. 90024613)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel:  (202) 598-0860;  Fax:  (202) 616-8470
E-mail:  kian.k.azimpoor@usdoj.gov

*Counsel for Defendants*